### KANSAS CITY SOUTHERN RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   October 5, 1923.)

#### No. 6278.

1. **Animals ⬳36—Evidence as to meaning of "accepted for immediate slaughter," in waybill, inadmissible.**

In a prosecution against a carrier for transporting in interstate commerce cattle from a quarantined to a nonquarantined district without having the words "Southern cattle" on the waybill, as required by Act March 3, 1905, §§ 2, 4 (Comp. St. §§ 8702, 8704), and the rules of the Secretary of Agriculture made in pursuance thereof evidence as to the meaning of the words on the waybill, "accepted for immediate slaughter," and that the last-quoted words had been accepted by the government in other cases as the equivalent of the first-quoted words *held* inadmissible.

2. **Animals ⬳29—Constitutional law ⬳62—Delegation to Secretary of Agriculture of authority to establish quarantine held valid.**

Act March 3, 1905, §§ 2, 4 (Comp. St. §§ 8702, 8704), prohibiting transporting cattle from a quarantined district to another state, except under conditions prescribed by the Secretary of Agriculture is valid, as Congress can delegate to the Secretary of Agriculture the authority to ascertain the existence of a cattle disease and to establish a quarantine in the infected district.

3. **Constitutional law ⬳60—General rule as to power which may be delegated stated.**

Power to make law, which necessarily involves a discretion as to what it shall be, may not be delegated; but authority or discretion as to its execution, to be exercised under and in pursuance of a law, may be delegated.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Constitutional law ⬤⟹48—In construing act, validity rather than invalidity favored.**

In construing an act, doubt must be resolved in favor of its validity rather than its invalidity.

**5. Animals ⬤⟹36—Instruction in prosecution against carrier for violating quarantine law held not prejudicial.**

In a prosecution against a carrier for transporting in interstate commerce cattle from a quarantined to a nonquarantined district without having the words "Southern cattle" on the waybill, as required by Act March 3, 1905, §§ 2, 4 (Comp. St. §§ 8702, 8704), and the rules of the Secretary of Agriculture made in pursuance thereof, where the waybill contained no words which were synonymous with "Southern cattle" an instruction that no words of similar import could be placed on waybills and substituted for the words "Southern cattle" *held* not prejudicial error, in view of Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

The Kansas City Southern Railway Company was convicted of accepting cattle for interstate shipment from a quarantined area to a nonquarantined area, and it brings error. Affirmed.

James B. McDonough, of Fort Smith, Ark., for plaintiff in error.

S. S. Langley, U. S. Atty., of Fort Smith, Ark. (W. H. Dunblazier, Asst. U. S. Atty., of Fort Smith, Ark., on the brief), for the United States.

Before STONE, Circuit Judge, and MORRIS and FARIS, District Judges.

FARIS, District Judge. Plaintiff in error, hereinafter called defendant, was convicted under an information charging it with accepting for shipment and transporting in interstate commerce, certain cattle from a quarantined area or district of Arkansas to the state of Texas, without having complied with a regulation promulgated by the Secretary of Agriculture, which required the waybill, pursuant to which said cattle were so moved, to have written or stamped thereon the words "Southern cattle."

A number of errors are urged for reversal. All these fall, however, within one or the other of three classes, namely: (a) Alleged errors bottomed on the refusal to admit certain evidence; (b) errors in the charge as given; and (c) errors in refusing to charge as requested by defendant.

[1] Touching alleged errors in refusing to admit evidence offered by defendant, it is too obvious for argument that the trial court was correct in its ruling. Defendant offered to have one of the witnesses explain the meaning of the words "accepted for immediate slaughter," which words were contained on the waybill, as also to have the witness testify that the words above quoted from the waybill had theretofore, in other cases, been accepted by the government as equivalent to the words "Southern cattle," which were required by the regulation of the Secretary of Agriculture to be on the waybill.

It needs no argument or authority to demonstrate that no error was committed in the above behalves by the trial court. The words "accepted for immediate slaughter" were clearly used in their ordinary

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

significance as words in the English language, and were not technical or trade words, and so the jury was as capable, as was the witness of construing them from all that appears on the record. If the witness was in fact better qualified than was the jury to construe these words, no foundation was laid showing this. It is obvious that the words "accepted for immediate slaughter" do not convey the idea that the cattle had been exposed to splenetic or Texas fever, or that they had emanated from a quarantined district, or that they were "Southern cattle." These identical words could be said with equal truth of any shipment of fat cattle designed to be sold in the ordinary course of business to any packing company in Chicago, St. Joseph, or Kansas City. The terms here used but express a fact which is universally known to exist with regard to beef steers shipped to packers for slaughter and conversion into food products.

The position of defendant upon the fact of alleged error, bottomed on refusal to allow evidence of former actions of the government in accepting in such cases alleged equivalent words, in its final analysis is that this defendant is not guilty, because others did the like and were not prosecuted. Men kill other men, and sometimes they are not prosecuted, or, being prosecuted, they are acquitted, but such lack of prosecution and such acquittal do not excuse murder. The mere statement of the contention, when baldly made, discloses its unsoundness.

[2] The strenuously urged question is whether there should not have been a directed verdict. Defendant was charged by an information with a criminal offense. The statute makes the offense attempted to be defined a misdemeanor. Barring the unnecessary written answer filed by defendant, in lieu of an oral plea of not guilty, the case was tried as a criminal case, and the verdict was the usual verdict in a criminal case. The statute under which defendant was convicted, so far as pertinent, provides in section 2 thereof as follows:

"No railroad company * * * shall receive for transportation or transport from any quarantined state * * * or from the quarantined portion of any state * * * into any other state * * * any cattle or other live stock, except as hereinafter provided." Section 2, Act March 3, 1905, 33 Stat. 1264 (Comp. St. § 8702).

The provisions thereafter contained in the act, and which are referred to in the section of the act above quoted, are to be found in section 4 of this act (Comp. St. § 8704), and so far as pertinent read thus:

"Cattle or other live stock may be moved from a quarantined state * * * or from the quarantined portion of any state * * * under and in compliance with the rules and regulations of the Secretary of Agriculutre, made and promulgated in pursuance of the provisions of section 3 of this act; but it shall be unlawful to move * * * any cattle or other live stock from any quarantined state * * * or from the quarantined portion of any state * * * in manner or method or under conditions other than those prescribed by the Secretary of Agriculture."

[3] On this situation and upon the complaint that a charge for a directed verdict ought to have been given, the defendant strenuously contends that these statutes, when read as a whole, make out a forbidden case of delegation by the Congress to the Secretary of Agriculture,

of the power to create and define a criminal offense. The general rule has been many times announced, touching what is delegable and what nondelegable in such case by the Congress. That rule says:

"The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made." St. Louis, etc., Railway Co. v. United States, 188 Fed. 191, 110 C. C. A. 63.

This prosecution was brought under the provisions of section 2 of the act, which makes it unlawful to move, or transport cattle from a quarantined portion of a state into some other state, except under conditions prescribed by the Secretary of Agriculture. There is no doubt that Congress could delegate to the Secretary of Agriculture the authority to ascertain the fact of the existence of contagious and infectious diseases in a given state or a part thereof, and thereupon to establish quarantine in such district, or area. Field v. Clark, 143 U. S 649, 12 Sup. Ct. 495, 36 L. Ed. 294.

[4] It is a more serious question whether Congress could make the violation of rules and regulations governing the mode and manner of shipping cattle from such area, a criminal offense. It will be noted, however, that what Congress actually did was to forbid absolutely the transportation of cattle from a quarantined area. See section 2 of the act. Thereafter it provided that this absolute prohibition notwithstanding, such transportation might be made upon compliance with regulations established and promulgated by the Secretary of Agriculture. We think it had the power to do this as it was done here. Even if it is conceded to be a matter of some doubt, in such case the doubt must be resolved in favor of the validity of the law, rather than of its invalidity. Moreover, late cases, some of them even stronger than the one at bar in favor of invalidity, and seemingly entirely analogous, have held that similar statutes do not constitute a delegation of legislative power by Congress, but to be permissible under the Constitution. U. S. v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563. In the latter case it is said:

"The authority to make administrative rules is not a delegation of legislative power, and such rules do not become legislation because violations thereof are punished as public offenses."

So far, then, as the refused request for a directed verdict was bottomed on the alleged unconstitutionality of the statute, it ought to be disallowed.

[5] The contention that the trial court erred in charging the jury "that no words of similar import can be placed on waybills and substituted for the words 'Southern cattle'" must, we think, upon the facts in evidence, be overruled. If the defendant had in fact used words which were synonymous with the words required by the regulations, the point might be pertinent. But, as forecast above, the words "accepted for immediate slaughter" conveyed no such meaning. It follows that what might have been error in the unequivocal charge that no deviation whatever from the precise language of the regulation was

permissible, even though synonymous words were used, falls short of error here, because of lack of evidence on which to bottom a different charge. As the record stands, we are not called on to rule this question, but leave it until a case shall arise, wherein its settlement shall be vital. On the case as made, the contention must be disallowed. See Act Feb. 26, 1919, 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246).

It results that the case ought to be affirmed, which is accordingly ordered.