313 So.2d 812 (1975)
Jessie JOHNSON
v.
Dave L. PEARCE, Commissioner of the Louisiana Dept. of Agriculture.
No. 55574.
Supreme Court of Louisiana.
April 24, 1975.
Rehearing Denied May 30, 1975.
*813 Joel B. Dickinson, Joel B. Dickinson & Associates, Baton Rouge, for defendant-appellant.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
BARHAM, Justice.
Plaintiff Jessie Johnson filed a "Petition for Declaratory Judgment & Damages" against Dave L. Pearce, Commissioner of the Louisiana Department of Agriculture. One of the purposes for filing the lawsuit was to obtain a money judgment against *814 the defendant, based upon a theory of malicious prosecution. In support of his claim Johnson cites several prior unsuccessful suits by Pearce as Commissioner to enforce the Bang's Disease (brucellosis) Eradication Laws against him. We conclude that there was probable cause for the suits previously instituted against Johnson and that there is no showing of malice; therefore plaintiff fails in his demand for damages.
Plaintiff's petition also seeks to have La.R.S. 3:2221 and 3:2223 declared unconstitutional, and concomitantly to have set aside the absolute quarantine against his cattle herd imposed under the authority of those statutes. We hold that the statutes are constitutional.
The defendant filed a general denial and reconventional demand for damages, asserting that plaintiff's suit was filed with malice and for revenge in the hope of disrupting the Department's policy of eradicating brucellosis in this State. We conclude that there is no merit in the reconventional demand.
FACTS
Johnson is the owner of a herd of purebred Charolais cattle in Evangeline Parish. On July 26, 1967 he sold one of his animals at the Alsobrook Guilbeau Stockyard in Opelousas, Louisiana. The animal was found to be a brucellosis reactor. Brucellosis, commonly called Bang's, is a disease in cattle which is transmissable to man as undulant fever.
A representative of the Livestock Sanitary Board, an agency of the Department of Agriculture, contacted Johnson on August 21 and requested that he pen his cattle for testing. He refused. On August 22 he was shown a copy of the report from the sale barn verifying that the animal was infected, and he was again urged to pen his cattle for testing. When he declined to do so, his herd was quarantined by the Livestock Sanitary Board.
On August 28, Johnson was officially notified by the Board to have his cattle penned for testing sometime prior to or on October 2, as required by La.R.S. 3:2221. Johnson refused to comply, and on November 7, 1967 the Commissioner of the Louisiana Department of Agriculture instituted suit seeking a mandatory injunction to compel Johnson to pen his cattle for testing for brucellosis infection.
The trial judge granted the injunction, but on appeal the Third Circuit decided that the Department did not prove Johnson's herd of cattle "has shown evidence of brucellosis infection" as required by statute La.R.S. 3:2221. The court did conclude, however, that "[s]ince it appears that plaintiff may be able to present sufficient evidence to make out his case if his right to do so is preserved, we will dismiss this case without prejudice." 213 So.2d 117, 119 (La.App.3rd Cir. 1968).
Accordingly, on January 14, 1969, the Commissioner caused a second suit to be instituted for a mandatory injunction to compel Johnson to pen his cattle for testing. At the trial, although the reports of the lab technician who actually performed the tests on Johnson's cattle were produced, the Department could not produce the lab technician. Since the lab technician was not available so that his qualifications as an expert could be examined, and Johnson was denied an opportunity to inquire into the procedure employed by the technician to determine the procedure's reliability, the trial judge ruled that the reports were not the best evidence. Without the evidence, the State had failed a second time to carry its burden to prove brucellosis infection in Johnson's cattle.
On October 27, 1969, the Livestock Sanitary Board again placed Johnson's herd under quarantine, this time classifying the quarantine as "absolute." Johnson was notified by the Board on December 2, 1969, to pen his cattle pursuant to the statutes. When he did not comply, a third suit was filed seeking a mandatory injunction under *815 the authority of La.R.S. 3:2221(C) to compel him to pen his cattle for brucellosis testing.
In this case the trial judge found that, according to testimony, 1889 "herds" of cattle were in Evangeline Parish. The "herd" classification was based upon statistics showing 1889 farms reporting cows and heifers. According to the statistical table, farms reporting and cattle herds were considered to be one and the same, regardless of the number of cattle on each farm. The trial judge did not agree that this evidence established the correct number of herds in the parish to serve as a basis for the computation required by La.R.S. 3:2221(C). It was his opinion that "herds" as used in the statute was not sufficiently defined. He also held that the words "as determined by the latest official Census of Agriculture" as used in the statute required the production of the 1969 census instead of the 1964 census which was produced.
In his reasons for judgment, the trial judge wrote:
"While the Court is in sympathy with the aims and intentions of the statute and the overall good that would come to this defendant, to the parish and state as a whole, to have defendant's cattle, and other similarly situated, tested for brucellosis, it must apply the law as it finds it; the Court cannot legislate . . . ."
The injunction was denied, and on appeal the judgment was affirmed.
Thereafter, during April, 1970, Johnson sold three Charolais bull calves. These calves were over eight months old and were sold without a valid thirty day negative brucellosis test certificate required by regulations promulgated by the Livestock Sanitary Board. Based upon this action, the fourth suit was filed against Johnson on November 9, 1970, seeking an injunction to restrain violation of the Board's Regulation #5, which prescribes:
"It is a violation of this regulation to sell cattle, not governed by other regulations of the Livestock Sanitary Board, in Louisiana for any purpose other than immediate slaughter unless they are accompanied by a Valid 30-day negative brucellosis test certificate. NO CATTLE MAY BE SOLD FROM BRUCELLOSIS QUARANTINED HERDS EXCEPT AS PROVIDED FOR IN REGULATION 16."
The trial judge was of the opinion that the decision in Pearce v. Johnson, 213 So.2d 117 (La.App.3rd Cir. 1968), which was the first suit filed, was controlling; and, in the absence of testimony establishing that Johnson's herd was infected, there was no basis for granting an injunction. The Board's appeal from this judgment was found to be premature because the trial court judgment had not yet been signed.
Finally, on September 17, 1971, the instant suit was brought and the record and proceeding of each of the foregoing suits is relied upon to support the claim of malicious prosecution.
Judgment was rendered in the trial court declaring La.R.S. 3:2221 and 3:2223 unconstitutional. As a result the quarantine was dissolved, and Johnson was awarded damages for malicious prosecution. The defendant appealed to the Third Circuit, and Johnson answered the appeal, seeking an increase in the award. However, the case was properly transferred to this Court on the ground that state laws had been declared unconstitutional, and this Court has exclusive appellate jurisdiction. La.Const. art. VII, § 10(2) (1921); La.C.C.P. art. 2162.

I.
In transferring this case to this Court, the Court of Appeal ordered: "that this appeal be transferred to the Supreme Court. The transcript is being mailed this *816 date to the Supreme Court. If the Supreme Court's filing fee is not paid (to the Supreme Court) within ten days from this date, the appeal shall stand dismissed."
The Clerk of this Court advised counsel for the defendant that, based upon La.R.S. 13:4521, a state department or agency was not required by this Court to pay the $25 filing fee for lodging an appeal. Therefore the order of the Court of Appeal to the contrary was without effect.

II.
The defendant contends that there is no allegation in Johnson's petition charging malice on the part of the Department or its Commissioner, and its exception of no cause of action should have been maintained. Since on the merits we find no malice chargeable to the Commissioner or any agent of the Department or Board, the technicalities of the petition need not be considered.
Recently, in Robinson v. Goudchaux's, 307 So.2d 287 (La.1975), we reaffirmed the rule of law stated in Eusant v. Unity Industrial Life Ins. Ass'n, 195 La. 347, 196 So. 554 (1940), pertaining to suits for malicious prosecution as follows:
"`An action for maliciously putting the law in motion lies in all cases where there is a concurrence of the following elements: (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff.'"
We apply these standards to the facts of this case. Furthermore, underlying these cases is the constitutional guarantee that "All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay." La.Const. art. I, ¶ 6 (1921). This Court has repeatedly maintained, also, that "`Actions of this sort have never been favored, and, in order to sustain them, a clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent.' * * *" Sandoz v. Veazie, 106 La. 202, 30 So. 767 (1901), quoting from Staub v. Van Benthuysen, 36 La.Ann. 467, 470 (1884).
As a general proposition, therefore, public policy requires that all persons shall fully resort to the courts for redress of wrongs, and the law protects them when they act in good faith upon reasonable grounds in commencing either a civil or criminal proceeding. Robinson v. Goudchaux's, supra. This principle has particular relevance to public officials who are charged by law with the enforcement of laws designed to protect the public at large. Only the grossest negligence or arbitrary and capricious conduct on their part will support a claim of malicious prosecution.
In the instant case, all of the facts and circumstances upon which the suits were based were communicated by the defendant to its counsel, and the suits were instituted and prosecuted upon advice of counsel. As a matter of fact, the responsibility for the extensive brucellosis eradication program is delegated by law to the Livestock Sanitary Board. This board, operating through an organization of veterinarians, inspectors and technicians, and upon information it considered reliable, communicated its findings to counsel. Counsel proceeded thereafter with the suits in what we believe to have been a conscientious effort by all concerned to eradicate a disease which might threaten the health of the people and the extensive livestock industry *817 of the State. Failure of the Board, its Chairman, and its agents to conscientiously enforce this eradication program would, in itself, have been a neglect of their duty and responsibility. It was a program in which Louisiana lagged far behind most of the other states, and the Board was understandably concerned with the effect of this status. For these reasons, we find the malicious prosecution claim to be without merit.

IV.
The thrust of the constitutional attack by the plaintiff is that La.R.S. 3:2221 and 3:2223 encompass an overbroad delegation of legislative authority to an administrative board. It is specifically argued that the statutes fail to set guidelines or standards sufficient to authorize an administrative body to make rules and regulations. Plaintiff does not attack the particular rules and regulations adopted by the Livestock Sanitary Board to carry out the eradication of brucellosis and the necessary quarantine regulations. Plaintiff only attacks the statutes authorizing the Board to promulgate rules and regulations for that purpose. These statutes provide:
"3:2221 A. Any person owning or having charge of any male or female cattle over eight months of age in a herd which has shown evidence of brucellosis infection, or has intermingled with or otherwise been exposed to brucellosis infected animals, upon at least thirty days prior written notification by an authorized agent of the Livestock Sanitary Board shall present and restrain the cattle for identification and testing, and such infected herds shall be retested until these herds have become classified brucellosis negative as defined in Regulation 17 of the Livestock Sanitary Board. Cattle in open range country shall be worked at a time to correspond to the normal procedure for handling such cattle.
"B. Evidence of infection includes finding one or more reactors to an official brucellosis agglutination test on animals bred on the farm, at livestock auction market, at a slaughter establishment or concentration point, or upon official report of a positive brucellosis milk ring test of a dairy herd.
"C. When the known infected herds in any parish have been reduced to five percent or less of the total number of herds in the parish, as determined by the latest official Census of Agriculture published by the United States Department of Commerce, Bureau of Census, the Livestock Sanitary Board shall have the authority to require a complete test of any herd in the parish which has had less than fifteen percent of the adult cattle officially tested within the last three years."
"3:2223. The Livestock Sanitary Board may promulgate necessary rules and regulations to carry out the eradication of brucellosis, and necessary quarantine regulations to prevent the reinfection of livestock."
The enactment of laws to prevent the spread of infectious and contagious diseases among domestic animals is universally recognized as a proper exercise of police power by a legislative body. The federal government, under authority of the Commerce Clause, United States Constitution Article 1, § 8, Clause 3, first enacted regulations for suppression of diseases in livestock by Act May 29, 1884. The current federal provisions which are pertinent to the Louisiana statutes we construe can be found in 21 U.S.C. § 114, § 114a and § 114a-1. Section 114a provides in essence:

"The Secretary of Agriculture * * * is authorized to control and eradicate any communicable diseases of livestock or poultry, including, but not limited to, * * * brucellosis of domestic *818 animals * * * in accordance with such regulations as the Secretary may prescribe. * * *" (Emphasis here and elsewhere supplied.)
Section 114a-1 authorizes immediate slaughter of reactors to a test for brucellosis, "* * * in accordance with such rules and regulations as the Secretary of Agriculture may prescribe * * *."
The Act of 1884 and its amendments have been the subject of much litigation. In Thornton v. United States, 271 U.S. 414, 46 S.Ct. 585, 70 L.Ed. 1013 (1926), the United States Supreme Court stated:
"More than this, it is established by United States v. Ferger, 250 U.S. 199, 63 L.Ed. 936, 39 Sup.Ct.Rep. 445, that the authority of Congress over interstate commerce extends to dealing with and preventing burdens to that commerce and the spread of disease from one state to another by such cattle ranging would clearly be such a burden, if it were not to be regarded as commerce itself and is therefore properly within the congressional inhibition * * *." 271 U.S. at 425, 46 S.Ct. at 588.
The federal statutes providing for the suppressing and preventing of disease in livestock have been held constitutional. More specifically the statutes have been held not to contain an improper delegation of legislative functions. Kansas City Southern Ry. Co. v. United States, 293 F. 8 (8th Cir. 1923), and United States v. Pennsylvania Co., 235 F. 961 (W.D.Pa.1916).
Almost all, if not all, of the states of this Union have joined with the Secretary of Agriculture in cooperative federal-state programs for the control and eradication of brucellosis in domestic animals. The only question for us to determine is whether the two statutes which attempt to align Louisiana with the community of interests of other states in fostering this program have met the necessary requirements for delegating rule-making power to an administrative body of the executive department We need to determine whether the statutes together or separately are infirm in that they fail to provide a declaration of policy and standards sufficient to admit of the delegation of power to the Livestock Sanitary Board to make rules and regulations to carry out a defined declaration of policy.
La.R.S. 3:2221 provides that under certain conditions owners of cattle in a herd, upon written notification by an authorized agent of the Livestock Sanitary Board, must present and restrain the cattle for identification and testing for brucellosis. It sets forth a test for the evidence of infection. It further provides for a complete test of any herd in a parish under certain conditions.
La.R.S. 3:2223 states a policy of eradication of brucellosis and inaugurates a program to prevent reinfection of livestock with brucellosis; it delegates to the Livestock Sanitary Board the authority to "promulgate necessary rules and regulations" to effectuate those purposes. The Louisiana statutes are very similar to the federal regulations.
As in the federal regulations, the State has set forth its determination that brucellosis should be eradicated. It has further provided that cattle herds are to be checked to determine if any of the herd are infected, that regulations should be drawn to protect other herds from infection, as well as protecting previously infected herds from reinfection. There can be no question that the legislature had the power to delegate to the Livestock Sanitary Board the power to adopt reasonable regulations and the tests it believed necessary for implementing the legislative purpose. This delegation is not a delegation of legislative power. The legislature has merely committed to a board of men with expertise the duty of drafting and revising rules and regulations as may be found necessary according to the times and circumstances. Isenhour v. State, 157 Ind. 517, 62 N.E. 40, 87 Am.St.Rep. 228 (1961).
*819 Our statutes, as do the similar provisions of the federal government, authorize the control and eradication of brucellosis and empower an agency of the executive branch of government to supply the details for furthering that legislative policy through the use of veterinary science in a time when that science is changing and progressing too rapidly for the legislature to adopt any detailed long-range program. In United States v. Rock Royal Co-operative, 307 U.S. 533, 574, 59 S.Ct. 993, 1013, 83 L.Ed. 1446, 1470 (1938), the United Stated Supreme Court stated:
"From the earliest days the Congress has been compelled to leave to the administrative officers of the Government authority to determine facts which were to put legislation into effect and the details of regulations which would implement the more general enactments. It is well settled, therefore, that it is no argument against the constitutionality of an act to say that it delegates broad powers to executives to determine the details of any legislative scheme. This necessary authority has never been denied. * * *"
In United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932), it was held:
"* * * But Congress may declare its will, and, after fixing a primary standard, devolve upon administrative officers the `power to fill up the details' by prescribing administrative rules and regulations. * * *" 287 U.S. at 85, 53 S.Ct. at 44.
Once the legislature has defined its policy to combat a disease or diseases among animals, the State, acting under its police power to protect the health, welfare and safety of the people, may confer upon administrative officers or bodies the power to adopt the rules and regulations to effectuate the legislative will. Campoamor v. State Live Stock Sanitary Board, 136 Fla. 451, 182 So. 277 (1938); Conner v. Carlton, 223 So.2d 324 (Fla.1969), appeal dismissed for want of substantial federal question, 396 U.S. 272, 90 S.Ct. 481, 24 L.Ed.2d 417 (1969); Ralston v. Hawes, 334 Mass. 51, 133 N.E.2d 589 (1956); North and Douglas v. Woodland, 12 Idaho 50, 85 P. 215 (1906); Smith v. State, 74 Tex.Cr.R. 232, 168 S.W. 522 (1914); Estes v. United States, 227 F. 818 (8th Cir. 1915); State v. Southern Ry. Co., 141 N.C. 846, 54 S.E. 294 (1906); Kansas City Southern Ry. Co. v. United States, supra; Panther v. Department of Agriculture of Iowa, 211 Iowa 868, 234 N.W. 560 (1931); Mulkey v. State, 83 Tex.Cr.R. 1, 201 S.W. 991 (1918); State v. Taylor, 223 S.C. 526, 77 S.E.2d 195 (1953); State v. Hodges, 180 N.C. 751, 105 S.E. 417 (1920); Reims v. State, 17 Ala.App. 128, 82 So. 576 (1919); United States v. Pennsylvania Company, supra; People v. Anderson, 355 Ill. 289, 189 N.E. 338 (1934); Affonso Bros. v. Brock, 29 Cal.App.2d 26, 84 P.2d 515 (1938); Armstrong v. Whitten, 41 F.2d 241 (S.D.Tex.1930).
We are of the opinion that our statutes have specifically established a definite policy of the State which permits an administrative body to make rules and regulations necessary for the administration and enforcement of that policy. They have clearly stated the purpose which the legislature seeks to accomplish. If the rules and regulations adopted by the Board exceed the limitations of that purpose, redress may be had in the courts. There is no delegation of the legislative power in La.R.S. 3:2221 and 3:2223.
For the reasons assigned, the judgment of the district court is annulled and set aside. It is therefore ordered, adjudged and decreed that plaintiff's suit is dismissed and defendant's reconventional demand is dismissed. It is further ordered that the trial court judgment dissolving the quarantine is null and void.
*820 All costs of these proceedings are cast against the plaintiff.
Reversed and dismissed.
SUMMERS, J., dissents in part and concurs in part and assigns reasons.
SUMMERS, Justice (concurring in part and dissenting in part).
I agree with the majority decision that plaintiff's claim of malicious prosecution is without merit. Notwithstanding that plaintiff does not succeed in his suit for malicious prosecution, the constitutionality of Section 2223 of Title 3 of the Revised Statutes remains as a viable issue, because the validity of the protracted quarantine over a period of eight years is dependent upon the constitutionality of this legislative delegation of authority.
The principal thrust of the constitutional attack, as the majority recognizes, is that Section 2223 contains an overbroad delegation of legislative authority to an administrative board without outlining proper guidelines. Specifically, it is asserted that the law sets no standards for imposing the sometimes awesome economic sanction which results from a prolonged quarantine of an entire herd. As the plaintiff Johnson testified, the quarantine compelled him to retain on his premises all the accretion from his herd during eight years. Aside from the fact that he was deprived of the right to sell any portion of this pure bred herd of valuable animals, except for slaughter, and therefore received no income to carry on his operation, the increase in the herd overcrowded his pastures, hindering the growth of grass and requiring that he purchase feed to sustain the animals.
The sole authority for the imposition of quarantine is to be found in Section 2223. In a vague and general way the section provides: "The Livestock Sanitary Board may promulgate necessary rules and regulations to carry out the eradication of brucellosis, and necessary quarantine regulations to prevent the reinfection of livestock."
I observe that the majority opinion upholding the constitutionality of this enactment fails to cite one Louisiana case to support its position. A review of the Louisiana jurisprudence on the subject of unlawful delegation of legislative power convincingly demonstrates that the law does not support the broad delegation of authority granted the Board, nor does the constitutional doctrine of due process permit a quarantine of an entire herd for a prolonged period of time without giving the herd owner an opportunity at a hearing to contest the validity of the quarantine.

I. Unlawful delegation of legislative power

The Constitution of 1921, under which this case falls, declares that "The legislative power of the State shall be vested in a Legislature, which shall consist of a Senate and a House of Representatives". La.Const. Art. III ¶ 1. These powers which the constitution invests in the legislature cannot be delegated to any body or authority. Dr. G. H. Tichenor Antiseptic Co. v. Schwegmann Bros. Giant Super Markets, 231 La. 51, 90 So.2d 343 (1956). Thus, "The general rule is that any statute or ordinance that purports to vest arbitrary discretion in a public officer, without prescribing a definite rule for his guidance, is unconstitutional." City of Shreveport v. Herndon, 159 La. 113, 105 So. 244 (1925), and the seven cases cited to support this rule.
Exceptions to this general doctrine exist in the law. Accordingly, the legislature may confer upon an executive or administrative officer or board discretion in the administration of the law with the right to determine facts or a state of things upon which the law makes or intends to make its own action depend, "provided that the statute establish a sufficient basic standard and rule of action for the guidance of the *821 instrumentality or officer that is to administer the law." (emphasis added.) City of Alexandria v. Alexandria Fire Fighters Assn., 220 La. 754, 57 So.2d 673 (1952).
Considering this proposition, in the Tichenor Case, supra, this Court said that "courts will not hesitate to strike down legislation vesting in private persons the right to determine the state of things upon which the effect of the law depends as this is a legislative delegation in its most obnoxious form." See also Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1935).
Considered under these elementary and fundamental principles, Section 2223 grants the Board the authority to promulgate quarantine regulations to prevent the reinfection of livestock, without a single basic standard or rule of action for the guidance of the Board which is to administer the rules it promulgates. That is to say, the board may promulgate and enact rules and regulations for invoking quarantine as it deems fit in its sole and unhampered discretion. In fact, in this case, no rules or procedure have been established for invoking quarantine. Quarantine was imposed over plaintiff's herd by the heavy hand of the Board without establishing in any proceeding at any time that plaintiff's herd was infected. This is made clear by the record in three litigated cases where the Board failed in that respect. To further illustrate the evil resulting from the unlawful delegation of legislative power, quarantine was invoked in this instance without a hearing, and plaintiff has had no opportunity to contest the validity of that quarantine, either before the board or otherwise.
There is no contention here that the State may not regulate and control brucellosis or establish a program to prevent infection of livestock with brucellosis. It is a contention, however, that in its effort to do so the legislature has made an unrestricted delegation of legislative power and authority to an administrative agency. In doing so the legislature has unconstitutionally failed to outline to the administrative agency basic standards and guidelines to accomplish that purpose. As a result, the administrative agency has acted in its sole and unregulated discretion, invoking the powers of the State as it saw fit without any legislative guidelines whatsoever insofar as quarantine is concerned. This, according to all established authority, makes the statute under which the Board acted unconstitutional.
The objectionable features of this legislation do not arise from the fact that details of regulation are left to the administrative agency. What is objectionable about this legislation is that no primary standard is recited whereby the administrative agency is guided in invoking quarantine. As a result no regulations are prescribed and quarantine is imposed at the discretion of the Board.
Specifically, the attack on the constitutionality of Section 2223 is based upon this Court's adjudication in State of Louisiana v. Morrow, 231 La. 572, 92 So.2d 70 (1956), in which a watch-making statute was struck down as unconstitutional. There the Court said: "The delegation of unlimited discretionary powers to the Board herein without fixing any standards or guideposts for the Board to carry out the legislative will is in effect a surrender of legislative power." Such a surrender is unconstitutional. More pertinent to the instant case is Ezell v. City-Parish Plumbing Board of Baton Rouge, 234 La. 441, 100 So.2d 464 (1958), in which this Court found "that a statute or ordinance vesting arbitrary discretion in a public official without prescribing fixed and definite rules or specific conditions for the official's guidance is unconstitutional." There a master plumber was deprived of his certificate as a master plumber without an opportunity to present any defense, for no guideline requiring such an important protection was contained in the statute under which the administrative authority acted.
*822 Clearly no guideline is contained in Section 2223. Only the brute authority is delegated to prescribe "necessary" quarantine regulations without setting out what is necessary. The statute is for that reason unconstitutional.

II. The denial of due process.

Even if it be conceded for argument that there was no unconstitutional delegation of legislative authority to the Board as a result of the broad and general authority conferred by Section 2223, the fact remains that Section 2223 is unconstitutional for another reason. The statute permitted the Board to impose this protracted and ruinous quarantine without according plaintiff notice or a hearing, thus denying him due process of law. Surely plaintiff has a valuable property right to raise cattle on his land to earn his livelihood free of unreasonable and unconstitutional restraint. The effect of the quarantine was to deprive him of this substantial property right. The economic loss resulting from the quarantine is uncontested in this record. Nor is it established in this record that any basis existed for the quarantine. To the contrary, in three separate and fully litigated cases in which the Board sought to establish the infection of plaintiff's herd to compel him to submit to inoculation, the judgments were against the Board. Yet the quarantine remained against plaintiff's herd.
A study of the legislation enacted by Congress outlining the Federal Government's approach to eradication of dangerous, contagious and infectious diseases in animals discloses nothing by way of policy or mandate which would approve what has taken place. Nor is it implied or implicit in the Act of Congress (21 U.S.C. §§ 114-130) that the owner of a cattle herd should have his herd quarantined for prolonged periods of time without being given an opportunity to challenge the reason for the quarantine or the facts upon which it is based. Nothing in the federal legislation requires that due process be denied this plaintiff. And Congress may not require such a result for the federal and state constitutions guarantee that no person shall be deprived of property without due process of law. U.S.Const. 5th & 14th Amends.; La.Const. Art. I, 2.
To fulfill the constitutional due process requirement legislation must embody fundamental principles of liberty and justice which lie at the base of all our civil and political institutions. French v. Barber Asphalt Paving Co., 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879 (1901).
The guaranty of due process of law is one of the most important to be found in the federal or state constitutions. It is the very essence of a scheme of ordered justice, without it the right of private property could not be said to exist in the sense in which it is known to our laws. No government, federal or state, may deprive a person of property except by observing its requirements.
The effect of the guaranty is to inhibit the taking of a person's property contrary to settled usages and modes of procedure without notice and opportunity for a hearing. Ochoa v. Hernandes v. Morales, 230 U.S. 139, 33 S.Ct. 1033, 57 L.Ed. 1427 (1912). In determining whether the requirement has been observed, regard must be had to substance rather than form, for the mere form of the proceeding cannot convert the process used into due process of law, if the necessary result is illegally to deprive a person of his property without compensation.
Essential to due process are "notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case." Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829 (1943). See also Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); United States v. Steel Tank Barge H. 1651, 272 F.Supp. 658 (E.D.La.1967).
Due process is an elusive concept, and its exact boundaries are undefinable. Thus its *823 content varies according to specific factual contexts. However, it is universally recognized that when governmental agencies adjudicate or make binding determinations which directly affect legal rights of individuals, it is imperative that those agencies use procedures which have traditionally been associated with judicial process. Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).
Other states which have Bang's disease eradication laws do not confer a blanket authority to administrative bodies to impose quarantine the way Section 2223 does. See Smith Hurd, Illinois Stat.Anno., Chap. 8 ¶ 134 et seq.; Ore.Laws 1939 Chap. 503; 1 Okla.Ann.Stat. 2 ¶ 6-91 et seq.; N.C.Gen.Stat.1943 Sec. 106-388, et seq.; Ohio Rev.Code 1953, 941.21 et seq.; N.Y. Agriculture and Markets Law, § 90 et seq., McKinney's Consol.Laws, c. 69; Neb.Rev.Stat.1943, 54-767; Ark.Stat.1947, 78-423 et seq.; Wash.Rev.Code 1951, Chap. 16:36-44; R.I.Gen.Laws 1956, 4-4-1 et seq.; Mo.Rev.Stat.1959, 267.010 et seq.; Utah Code Ann. 1953 4-8-1 et seq.; Vermont Stat.Ann.1959, Title 6 ¶ 1531 et seq.
In all of the above statutes the legislatures either gave comprehensive guidelines or, in one statute (Okla.Ann. 2 ¶ 6-91 et seq.) the guidepost was "an approved plan composed of a plan or combination of plans adopted or recommended by the United States Livestock Sanitary Association and approved by the United States Agricultural Research Service and the State Board of Agriculture." New York gave the cattle owner the right to a review or hearing if his livestock health permit was revoked. North Dakota also grants a right to review where an animal health permit is revoked, as do Kentucky, Minnesota, Florida, New Jersey, New York and Puerto Rico. See Ky.Rev.Stat.1962, 257.090; N.J.Rev.Stat.1937, 4:5-93.23; Fla.Stat.Ann., ¶ 585.45; N.D.Code of 1943, 36-01-14; P.R.Laws Anno.1954, Title 5, ¶ 821; Minn.Stat.1965, 35.26 and 35.27; N.Y. Agriculture and Markets Law ¶ 90-f.
In my view the quarantine in this case offends every concept of due process. The board's actions were arbitrary and without legislative or administrative guidelines. The quarantine was imposed without notice or hearing. Plaintiff has suffered grevious loss of property and has had no opportunity to present his side of the case to the administrative body responsible for the quarantine.
It is the failure of the Court to adhere to the fundamental principles referred to here which results in this decision.
I would revoke the quarantine and declare Section 2223 unconstitutional insofar as it authorizes quarantine without fixing standards, including notice and hearing, for its imposition over a prolonged period of time.