372 So.2d 707 (1979)
Mr. and Mrs. Douville JUNOT et al.
v.
Mr. and Mrs. Thomas LEE and Gordon Hackman.
No. 8223.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1979.
Rehearing Denied July 12, 1979.
*708 William M. Detweiler, New Orleans, for plaintiffs-appellants.
Gordon Hackman, Boutte, for defendants-appellees.
Before SAMUEL, REDMANN, GULOTTA, STOULIG and BEER, JJ.
SAMUEL, Judge.
Plaintiffs, Mr. and Mrs. Douville Junot, filed this suit against Mr. and Mrs. Thomas Lee and their attorney, Gordon Hackman, for damages allegedly incurred through malicious prosecution. They complain the defendants maliciously and without probable cause filed numerous legal proceedings seeking to deprive them of the custody of their adopted child, that they incurred attorney fees of $2,500 to defend these frivolous claims, and that their emotional stability was threatened by the harassment to which they were subjected. The Lees are the parents of Mrs. Junot.
Following trial, there was judgment in favor of the three defendants and against the plaintiffs, dismissing the latters' demand. Plaintiffs have appealed.
On October 6, 1968, Leah Grace Junot became the adopted child of plaintiffs.[1] Between that date and March 17, 1973, at the request of the plaintiffs, the adopted child lived primarily at the home of the Lees. Plaintiffs' household apparently was less stable because the family moved frequently as a result of the fact that Mr. Junot often changed jobs.
After having the child for approximately five years, the Lees were asked to return her to the Junots. They refused. On March 1, 1973, plaintiffs filed a writ of habeas corpus against the Lees seeking return of the child. After a hearing thereon, judgment was rendered on March 17, 1973 ordering the return of the child to the Junots.
Contemporaneous with and subsequent to the habeas corpus hearing, Gordon Hackman, as attorney for the Lees, filed a series of legal proceedings to remove the child from plaintiffs' custody and return her to the Lees.
We summarize the proceedings filed and/or instigated by defendants' attorney and the dispositions of each:

March 16, 1973 (one day before the habeas corpus hearing) Mr. and Mrs. Thomas Lee petitioned the Juvenile Court to annul the adoption of Leah Junot. On March 21, 1973, the rule was denied with the notation that the "adoptive grandparents are not proper parties of interest to contest adoption in which final decree has been rendered on October 7, 1968." On June 12, 1973, Hackman filed a notice of intention to apply for a writ of certiorari to this court, but never followed through with the application.

*709 March 27, 1973 Within two weeks of the issuance of the writ of habeas corpus requiring the Lees to return the child to the Junots, Hackman prepared and filed a petition to have the child declared abandoned based on allegations that the child had been living in the Lee home since her adoption. This had already been considered in the habeas corpus hearing. The Junots filed exceptions of no right or cause of action. On May 30, 1973, a judgment was rendered sustaining the exceptions on evidence stipulated by counsel. On June 4, 1973, Mr. Hackman filed a motion for an appeal which was not granted because of confusion in the record that he probably could have clarified. (We note the transcript indicates the judge felt the exceptions were moot because the admitted facts established there was no abandonment as a matter of law.)

June 6, 1973Mr. Hackman filed a petition on behalf of Mr. and Mrs. Lee seeking the adoption of Leah Junot. To this pleading the Junots filed exceptions of no right or cause of action, lack of jurisdiction and judicial estoppel. A hearing was set for September 10, 1973 and Hackman did not appear. Only 30 minutes before the hearing, his secretary called the court to say he would not be present, but by this time it was too late to notify opposing counsel and witnesses. Hackman was cited for contempt on the court's own motion.
Malicious prosecution in civil cases occurs when legal actions are commenced without probable cause for the purpose of harassment. This definition exempts Mr. and Mrs. Lee from liability for the reason that, under Civil Code Article 3010, the agent alone is liable for acts beyond the scope of the mandate, and the Lees did not authorize their attorney to take any illegal action. They retained him to proceed within the law to have their grandchild returned to their custody, even if it meant, according to Mrs. Lee, taking it "to the highest court in the land". From our reading of the record, we are satisfied the Lees acted in this matter out of their love and affection for the child. The record also supports a finding that they did not commence any unnecessary litigation for the purpose of harassment, nor has it been shown, and it cannot be presumed, that they authorized their attorney to engage in a futile or harassing series of legal maneuvers.
Relative to liability on the part of the attorney, Mr. Hackman, in Kogos v. Rittiner, La.App., 228 So.2d 62, 69, this court summarized the elements of malicious prosecution in a civil case as follows:
"We recognize the fact that a suit for damages arising out of a `malicious prosecution' is not limited to criminal prosecutions, but may also result from civil actions. There are involved in this suit certain elements which would be present in a malicious prosecution suit, but there are other elements which go beyond the events directly involved in a civil action complained of.
The authorities cited by defendant Nelkin on this subject are thoroughly sound and generally recognized. The test applied to determine liability in such cases was stated by our Supreme Court in Eusant v. Unity Industrial Life Ins. and Sick Benefit Ass'n., 195 La. 347, 196 So. 554, 556 (1940), and applied in later cases as follows:
`An action for maliciously putting the law in motion lies in all cases where there is a concurrence of the following elements: (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff. * *' 38 Corpus Juris 386, section 5."
As Mr. Hackman was trained in the law, he should have known that some of the pleadings filed by him would not achieve his clients' purposes under the then current jurisprudence. *710 Nevertheless, his "Russian roulette" method (as characterized by plaintiffs) of pleading does not violate the fifth element (in the above quotation from Kogos) required for a successful action for malicious prosecution, i. e., an absence of probable cause, to such an extent that, by itself, it would constitute malice. In the light of our changing jurisprudence, in all except where a clear case has been established, we must avoid second-guessing an attorney who urges a position which has little or no chance of winning under current jurisprudence. Particularly in recent and near recent years, numerous jurisprudential rules, settled by many cases over periods of many years, have been overruled and opposite results reached.[2] Those results could not have been reached if the successful litigants had been prevented or deterred from asserting their positions.
To hold that an attorney who files pleadings, numerous or otherwise, in support of his client's position has acted overzealously in his client's behalf, and therefore is liable in damages to the other litigant or litigants because those pleadings have little or no merit, would result in an undesirable chilling effect on the attorney's efforts to properly represent and support his client. If an attorney did not properly represent and support his client, he could be subjected to a suit for malpractice.
In Johnson v. Pearce, La., 313 So.2d 812, 816 the Supreme Court made this statement relative to actions for malicious prosecution in civil matters:
"This Court has repeatedly maintained, also, that `"Actions of this sort have never been favored, and, in order to sustain them, a clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent." * * *'."
Finally, we analogize the matter before us to cases involving damages requested for frivolous appeal. The Supreme Court's standard for such an award is found in Parker v. Interstate Life & Accident Insurance Co., 248 La. 449, 179 So.2d 634, 636-637:
".... it is patent that, when appellate courts are required to assess the sincerity of counsel (or lack thereof) in the stand he advocates, they are dealing in a most nebulous area of subjective beliefs which cannot be determined, save in extremely exceptional circumstances, by judicial rejection of the claim as unsound. For, here, we are not attempting to judge a legal right or wrong but, rather, the truth of an asserted belief in a contention. Accordingly, when counsel proclaims his sincerity, a court finds itself without just cause to disbelieve unless, and only unless, the proposition advocated is so ridiculous or so opposed to rational thinking that it is evident beyond any doubt that it is being deliberately professed for ulterior purposes."
Here, the record does not support a finding of malice on Mr. Hackman's part. His testimony indicates he believed his clients had a cause of action against the Junots either under a theory that the judgment of adoption was a nullity or that the Junots had abandoned the child. In his written Reasons for Judgment, the trial court stated: "... the Court is of the opinion that albeit both parties are very serious in the question of adoption of the adoptive *711 child, neither the Lees or Mr. Hackman were attempting to harass the Junots." We agree with that conclusion.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
STOULIG, J., dissents with written reasons.
BEER, J., dissents.
STOULIG, Judge, dissenting.
I respectfully dissent.
In my opinion the defendants, Mr. and Mrs. Thomas Lee and/or Gordon Hackman, their attorney, should be cast in judgment for all reasonable attorney fees incurred by the plaintiffs (after the initial habeas corpus proceeding) for malicious prosecution and harassment.
On October 7, 1968, Leah Grace Junot became the adopted child of plaintiffs by final judgment in Proceeding No. 1451 of the Juvenile Court for the Parish of Jefferson.
At the outset it should be noted that Mr. and Mrs. Lee are the parents of Mrs. Junot and they were requested by their daughter to permit the adopted child to live with them because of Mr. Junot's frequent changes of employment and places of residence. The Lees agreed to keep the child on a temporary basis until the adoptive parents were in a better position to care for their child. After having the child in their home for five years, Mr. and Mrs. Lee were asked to return her to the Junots and they refused to accede to their daughter's request. The ensuing struggle for custody touched off multiple court proceedings.
On March 1, 1973, plaintiffs petitioned the 24th Judicial District Court to issue a writ of habeas corpus and after a hearing was held, judgment was rendered March 17, 1973 requiring defendants to return Leah to the custody of her adoptive parents. Contemporaneous with and subsequent to this hearing the attorney for Mr. and Mrs. Lee filed a series of legal proceedings that were apparently intended to remove the child from the plaintiffs' custody and return her to the Lee home. His whole effort might be characterized as an exercise in futility because, from the inception, the maneuvers could not accomplish this for his clients. The abortive legal maneuvers were all filed within six months of the issuance of the writ of habeas corpus directing the Lees to return the Junots' child to them. In reality it was a certainty in 1973, under the circumstances existing in this matter, that Mr. and Mrs. Lee would not be permitted to adopt this child or to regain custody by a judgment of the Juvenile Court. The majority opinion has enumerated the various legal maneuvers undertaken on the Lees' behalf; however, they bear repeating to establish the time frame within which they were filed and to emphasize the character of the proceedings. The habeas corpus proceeding filed by plaintiffs was scheduled for hearing on March 14, 1973, but was continued at the request of the defendants' attorney until March 17. During the intervening delay defendant attorney petitioned to annul the final judgment of the adoption of the minor child by plaintiffs, knowing full well that the Lees were not the proper parties of interest. The suit was dismissed and the attorney filed notice of the intention to file for writs, which were never effected.
Within two weeks of the judgment in the habeas corpus proceeding ordering the defendants to return the child to plaintiffs, the attorney for defendants provoked an action to declare the child abandoned even though this was one of the issues considered in the habeas corpus matter. In the abandonment hearing the attorney for defendants stipulated that the child had not been abandoned for four months prior to the filing of the action and/or hearing in the matter nor had plaintiffs refused to provide for the care and support of the child as required by R.S. 9:403.[1] The Juvenile Court *712 sustained an exception of no cause of action and dismissed the abandonment action based on the stipulations of both counsel.
Seven days after dismissal of the abandonment action, the defendants filed a petition for adoption of the minor based upon the allegations that the plaintiffs had abandoned the child since birth and for the last six months the child has been in defendants' home, which were contrary to the stipulations of fact by defendants' attorney in the abandonment proceeding. On the date of and immediately prior to the hearing on the adoption, the attorney for defendants informed the court he would not appear but would submit the matter on the welfare report. The petition for adoption was dismissed because the defendants and their attorney failed to appear for trial. The defendants' attorney was cited by the court for contempt.
Meanwhile defendants' attorney filed a devolutive appeal from the adverse judgment dismissing the abandonment action (the facts of which he stipulated). This appeal was dismissed because of defendants' failure to timely perfect it.
Malicious prosecution in civil cases occurs when legal actions are commenced without probable cause for the purpose of harassment. If defendants directed their attorney to file the multiplicity of actions solely to compel the plaintiffs to undergo the expense, mental anguish and inconvenience of litigation, they should be cast in judgment for damages. On the other hand if the attorney acted beyond the scope of the mandate of his clients, then he is liable under C.C. art. 3010. Of these defendants the attorney trained in the law is charged with the knowledge that the numerous pleadings would not achieve his clients' purposes and, at the same time, was aware they would cause inconvenience and expense to the plaintiffs. It cannot be validly contended that they were instituted for the purpose of maintaining physical custody of the child in the Lees, since the child had been returned to the plaintiffs on March 17.
The majority concludes the suit must be dismissed because the evidence fails to prove malice. It overlooks the jurisprudence that holds malice is present where there is a wanton and reckless disregard of rights. Robinson v. Goudchaux's, 307 So.2d 287 (La.1975); Joyner v. Weaver, 337 So.2d 635 (La.App. 3d Cir. 1976). Joyner points out that generally malice must be inferred from the circumstances because it cannot be demonstrated by direct evidence.
Culpepper v. Ballard, 344 So.2d 110 (La. App. 2d Cir. 1977), holds malice will be inferred when the defendant has acted irresponsibly in prosecuting and in so doing has not considered the damage caused to the accused.
In this case Gordon Hackman filed one suit that he admitted had no merit and a second where he failed to appear for trial. These legal maneuvers instituted by defendants' attorney were filed obviously with no expectation of achieving their objective and caused the Junots additional expenses for legal counsel and mental anguish because the custody of their child was threatened. Vigorous representation is commendable but I cannot agree with the majority that filing a series of useless pleadings is competent advocacy. I cannot view the attorney's actions as vigorous representation; rather, I think he has crossed into the area of irresponsibility. The facts warrant imputation of malice.
BEER, Judge, dissenting.
I respectfully dissent for the reasons assigned by STOULIG, J.
NOTES
[1] By final judgment of the Juvenile Court for the Parish of Jefferson.
[2] While there are many such instances, we believe these examples will suffice: Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (overruling the "separate but equal" doctrine which permitted racial segregation in public schools); Baumgartner v. State Farm Mutual Auto. Ins. Co., La., 356 So.2d 400 (holding a pedestrian-plaintiff's contributory negligence will not bar his recovery in a pedestrian-automobile accident); Turner v. Bucher, La., 308 So.2d 271 (holding a parent with whom a child resides is liable for the damages occasioned by the child's acts, which acts are tortious when measured by normal standards, even though the child is of such tender years as to be legally incapable of committing a tort); and Holland v. Buckley, La., 305 So.2d 113 (holding there is a presumption of fault on the part of the owner of a domesticated animal which harms another person, regardless of whether the animal had dangerous propensities or if it had such propensities, whether the owner had knowledge thereof).
[1] The abandonment action was filed ten days after the child had been returned to the plaintiffs and was being supported and maintained in their household. The Juvenile Court judge observed during the proceedings, "In view of the stipulations, we find that neither criteria