## JOHNSON *v*. EBBERTS.

*(Circuit Court, D. Oregon.* October 25, 1880.)

1. MALICIOUS ARREST.

   No one has the right to cause the arrest of another as an experiment, for the purpose of finding out who committed a particular offence, and an arrest under such circumstances is malicious.

2. SAME—MALICE—LIABILITY.

   The malice necessary to sustain an action for malicious arrest is not express malice, or a specific desire to vex or injure another from malevolence or motives of ill will, but the wilful doing of an unlawful act to the prejudice or injury of another.

*John H. Read,* for plaintiff.
*Rufus Mallory,* for defendant.

DEADY, D. J. On October 9, 1879, the plaintiff, upon the complaint and affidavit of the defendant, was arrested at Pendleton upon the charge of uttering a forged note upon the defendant, dated March 1, 1879, for $250, payable 12 months after date, to J. A. Peek, or order, and by the latter indorsed in blank, and taken thence to Junction, and there, after an examination before a magistrate, duly discharged.

This action is brought to recover damages for this alleged malicious prosecution of the plaintiff by the defendant. On the trial the jury gave a verdict for the defendant, which the plaintiff now moves to set aside. The complaint alleged that the prosecution was with-

out probable cause and malicious, but this was denied by the answer; and these were the questions submitted to the jury. Malice is not to be *presumed* from the want of probable cause, but the jury must find the malice as a substantial fact in the case. *Wheeler* v. *Nesbitt*, 24 How. 551; *Stewart* v. *Sonnenborn*, 98 U. S. 191; *Levy* v. *Brannan*, 39 Cal. 488. But the want of probable cause is evidence of malice, and, in cases where there is no evidence to the contrary, is sufficient to justify a verdict for the plaintiff. Where the facts are undisputed the question of probable cause is simply one of law for the court; but where this is not so, the court must instruct the jury hypothetically as to what is or is not probable cause, and the latter must apply the instructions to the facts found by them and give a verdict accordingly.

But the facts in this case, upon any view of them, do not, in my judgment, constitute probable cause for the arrest of the plaintiff. Peek, the party who indorsed the note to the plaintiff, was the defendant's nephew, and not a person of good standing at Eugene, the place where he lived. He indorsed the note to the plaintiff, who was a comparative stranger to him and the neighborhood, for the right to make and vend a patent washer in the county of Lane. The plaintiff may have known or had reason to suspect that the note was forged, but his conduct in every particular, save probably one, indicated the contrary. The note, being underdue, was not presented to the defendant for payment, but assuming that the plaintiff was informed by the Osbornes, as they testify and he denies, that Ebberts had told them the note was not genuine, I think it a singular circumstance that the plaintiff did not go to the defendant and make some inquiry of him concerning the matter. Finally, the defendant had Peek arrested for the forgery, who, upon the examination before the magistrate, was discharged; but afterwards, and subsequent to the arrest and discharge of the plaintiff, he was indicted for the offence, and convicted upon the plea of guilty.

When the defendant caused the arrest of the plaintiff he had no information tending to make it appear that he had been guilty of any crime in relation to the note, except the unverified statement of Peek that the note was forged at Roseburg, and the plaintiff had a hand in it, and that he, Peek, had only indorsed it. But this statement ought not to have been believed or acted upon, because: (1) Peek was not generally, nor in the estimation of the defendant, a reliable person—he had just charged him upon oath with the forgery of this same note; (2) he was confessedly a party to the forgery; and (3) it

was apparent from the face of the note, and the date of the conversation between the defendant and the Osbornes, that the note was made some weeks before the plaintiff went to Roseburg.

The plaintiff testified that the reason he had the defendant arrested was, "he had my note and I wanted to know how he got it." But no one has a right to cause the arrest of another as an experiment, for the purpose of finding out who committed a particular crime. This is trifling with the liberty and good name of another, which the law does not justify or excuse. But it must appear that the arrest was malicious, as well as without probable cause, before the defendant can be held responsible in damages. It is not claimed that there is any direct evidence of malice, but only that it is sufficiently shown by the circumstances of the case. The malice necessary to sustain this action is not express malice, a specific desire to vex or injure another from malevolence or motives of ill-will, but the wilful doing of an unlawful act to the prejudice or injury of another. *Frowman* v. *Smith,* 12 Am. Dec. 268.

Tried by this standard I think the weight of evidence in this case is that this prosecution was malicious—was purposely wrong and without justifiable cause. The jury, in coming to a contrary conclusion, must have misunderstood the charge of the court upon this point, or have been misled by the eloquent appeal of the counsel for the defendant upon the relative merits of patent-right peddlers and farmers.

This may not be a case for exemplary damages, for admitting, as we must, the plaintiff's innocence, yet to his indiscretion in the purchase and attempted disposition of this note may be attributed in some measure the suspicions which led to his arrest. But, nevertheless, the defendant having, without sufficient cause and in wilful disregard of the plaintiff's rights, caused his arrest for the purpose of finding out who forged this note—thus experimenting with his liberty and good name—ought not to be absolved from all the consequences of his mistake or misconduct.

The motion for a new trial is allowed, with costs to abide the event of the action.