685 So.2d 281 (1996)
Marshall WINN, Plaintiff-Appellant,
v.
CITY OF ALEXANDRIA, et al, Defendants-Appellees.
No. 96-492.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1996.
*282 Fred Andrew Pharis, Alexandria, for Marshall Winn.
Albin Alexandre Provosty, Alexandria, for City of Alexandria et al.
Robert Lewis Bussey, Assistant District Attorney, for Rapides Parish District Attorney.
Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
SAUNDERS, Judge.
Plaintiff seeks damages for his allegedly wrongful arrest. The trial court rendered judgment in favor of defendants. We affirm.

FACTUAL BACKGROUND
At approximately 10:00 a.m. on Sunday, February 12, 1989, Marshall Winn was at his father's house on Henry Street in Pineville, Louisiana, when he was called by his sister, Linda Winn. Linda asked Marshall to go with her to visit their mother's grave. She told Marshall that she would purchase flowers while Marshall was in transit to her apartment.
After purchasing the flowers, Linda arrived at her apartment. Marshall arrived shortly after his sister did and approached the door of his sister's apartment unnoticed by any witnesses. Upon walking up to his sister's kitchen door, Marshall testified that he heard sounds inside the apartment that alerted him. At this point, Marshall tried to break into the apartment to get to his sister and while doing so, Linda began to scream. Linda's screams awoke three witnesses: Monya McMichael, Kelly Redmond, and Peter Pekeyzer, who were in another duplex apartment house and then began to observe from their own viewpoint the events that occurred.
Marshall testified that as he fought desperately to enter the apartment, he caught a glimpse of his sister being restrained by a knife-wielding assailant. Marshall described the altercation that continued and testified that the assailant held him at bay at the door and wounded him with stab wounds to the neck, the mouth and the right hand, before the assailant fatally wounded Linda. Next, Marshall stated that the assailant turned away and he was unaware of where the man had gone because he was interested only in helping his sister.
According to Marshall and another witness, Linda Haynes, Marshall immediately helped Linda to his truck and brought her to St. Francis Cabrini Hospital. However, before Marshall and Linda reached the truck, Linda Haynes was able to ask Linda what happened and she replied, "I was attacked."
Following the incident, the first Alexandria Police Department officer on the scene, Tommy Thompson, talked to residents of the apartment complex and then went to the hospital. There, the officer got a description from Marshall Winn of the assailant that allegedly wounded him and killed his sister.
However, after other officers arrived at the scene and were able to interview several witnesses, nothing was gathered to corroborate the story Marshall Winn told the police. Instead, the witnesses stated that as the white male continued to beat on the door, *283 Linda continued to scream and fight to keep the door closed. Thus, as viewed by the witnesses, it appeared that the white male, i.e., Marshall Winn, and his sister were struggling with one another. Additionally, although the witnesses could not definitively confirm that Marshall was the perpetrator, they consistently held that the events that occurred looked more like Linda was preventing Marshall from entering the apartment rather than confirming Marshall's account of what took place.
Based upon the independent investigation of the police that did not indicate the presence of a third party on the premises, and on the statements given by four witnesses, Officer Ethel Queen, the detective assigned to investigate the death of Linda Winn, assisted by the District Attorney's Office, presented an affidavit to a judge in order to obtain an arrest warrant.
Mr. Winn, plaintiff in the current civil proceeding, was arrested by the Alexandria Police Department on February 14, 1989, pursuant to an arrest warrant signed by the trial judge on the basis of evidence obtained by Detectives Queen and Kenneth McCall tending to establish that plaintiff had murdered Linda Winn, his sister. He was released on bond the same day.
After a Rapides Parish grand jury returned a "no true bill" on April 19, 1989, Mr. Winn sued the City of Alexandria, Chief of Police Glen Beard, and Detective Kenneth McCall on February 14, 1990, asserting claims of malicious prosecution and false arrest. Following trial, judgment was rendered July 14, 1995, denying all of plaintiff's claims.
In this appeal, plaintiff seeks reversal of the civil judgment, urging three different legal theories which we take up consecutively: false arrest, malicious prosecution, and general negligence.

I. FALSE ARREST
Plaintiff's first theory seeks damages for false arrest, a theory which, technically speaking, does not avail itself in this case.
The distinction between actions for false imprisonment and those for a malicious prosecution are far apart. In a false imprisonment, the arrest is made either without any legal process or warrant, or under a warrant null upon its face. In a malicious prosecution, the proceedings are had in pursuance of legal process, maliciously and wrongfully obtained. DeBouchel v. Koss Const. Co., Inc., 177 La. 841, 149 So. 496. Lord Mansfield says, in noting the difference between false imprisonment and malicious prosecution, that: "* * * The wrongdoer in making the unlawful arrest or causing it to be made, takes the law in his own hands and acts without a warrant from a court or magistrate while the man who instigates a malicious prosecution puts the machinery of criminal law into operation, causing a warrant to issue and the arrest under the warrant." Johnstone v. Sutton, 1 Term Reports 544 (Eng.), 1 English Ruling Cases 765; DeBouchel v. Koss Const. Co., Inc. supra.

Barfield v. Marron, 222 La. 210, 62 So.2d 276, 280 (1952).
Therefore, while an action for malicious prosecution may be brought where an individual is aggrieved by the consequences that flow from the governing authority's having obtained a facially valid arrest warrant, the same cannot be said of a claim for false arrest or imprisonment, even where a peace officer's statements giving rise to an arrest warrant are proven to be untrue. Edmond v. Hairford, 539 So.2d 815 (La.App. 3 Cir. 1989); Touchton v. Kroger Co., 512 So.2d 520 (La.App. 3 Cir.1987).
In this case, plaintiff was arrested in a criminal proceeding in which peace officers had obtained facially lawful warrants. Therefore, plaintiff cannot prevail on his action for false arrest or imprisonment. See O'Conner v. Hammond Police Dept., 439 So.2d 558 (La.App. 1 Cir.1983).[1] The success *284 of this case must turn on plaintiff's remaining alternate theories of malicious prosecution or general negligence, which we address in turn.

II. MALICIOUS PROSECUTION
A civil action for malicious prosecution requires the concurrence of the following elements: (1) the commencement or continuance of a criminal proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original (criminal) proceeding; (3) its bona fide termination in favor of the present (civil) plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages. Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So.2d 446 (La.1987); Jones v. Soileau, 448 So.2d 1268 (La.1984); Hibernia Nat. Bank v. Bolleter, 390 So.2d 842 (La.1980); Johnson v. Pearce, 313 So.2d 812 (La.1975); Robinson v. Goudchaux's, 307 So.2d 287 (La.1975); Eusant v. Unity Industrial Life Ins., 195 La. 347, 196 So. 554 (1940).
In this case, there was no question of the presence of the first three factors. Plaintiff was arrested by officers of the Alexandria Police Department, whose officers included those named defendants in the present civil suit, and the grand jury refused to indict plaintiff. Finding probable cause for plaintiff's arrest and retention and no malice on the officers' parts, the trial court concluded that plaintiff's civil case failed and entered judgment in favor of defendants, pretermitting the question of damages.
Our review requires that we examine the trial court's findings of probable cause and malice, the two most important elements of the six. Miller, 511 So.2d 446. This review is governed by the manifest error standard of appellate review. Id.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La. 1979); Davis v. Owen, 368 So.2d 1052, 1056 (La. 1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La. 1978); A. Tate, "Manifest Error" Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985).
Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The trial court found in favor of defendants on the malicious prosecution charges advanced by plaintiff. Initially, the trial court concluded that, as a matter of law, plaintiff was required to demonstrate that the officers lacked probable cause to arrest him, which he failed to do. Second, the trial court concluded that even if defendants were required to exculpate themselves, they succeeded in doing so at trial. Thus, according to the trial court, defendants were absolved of liability regardless of who bore the burden of persuasion.
On appeal, plaintiff maintains that the trial court erred in its initial determination and we agree. As was stated in Robinson v. *285 Rhodes, 300 So.2d 249, 251 (La.App. 2 Cir.), writ refused, 303 So.2d 178 (La.1974):
The burden ... is ordinarily upon the plaintiff to prove both malice and the absence of probable cause. But the authorities have firmly established the rule that where a committing magistrate, without a trial, has discharged the accused, or the prosecuting officer has dismissed the charge, or where a grand jury has returned a no bill, there is a presumption of want of probable cause with the result that, in a suit for malicious prosecution based on that discharge, the burden of showing that he acted on probable cause and without malice is upon the defendant.
(Emphasis added.)
Therefore, were it not for the trial court's alternate conclusion that defendants' case was sufficient to rebut the Robinson presumption, its conclusion would be deserving of little deference and we would be required to review the record de novo. "Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record." Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980).
However, here the trial court further observed that defendants were innocent of malicious prosecution even if it had been their obligation to exonerate themselves given the presumption set forth above in Robinson, 300 So.2d 249. After reviewing the record in its entirety, we conclude that the trial court did not manifestly err in its conclusion. For the reasons set forth in the two subsections which follow, the evidence supports the conclusions that (1) defendants had successfully proven that probable cause existed for Mr. Winn's arrest and detention, and (2) malice played no part in the investigating or arresting officers' motives.[2]

(i) Probable Cause
Probable cause for arrest exists when facts and circumstances within the knowledge of the arresting officers and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed an offense or is committing an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Raheem, 464 So.2d 293 (La.1985); State v. Arceneaux, 425 So.2d 740 (La.1983); State v. Johnson, 422 So.2d 1125 (La.1982).
The appearances must be such as to lead a reasonable person to set the criminal process in motion; unfounded suspicion and conjecture will not suffice. Prosser & Keeton, at p. 876. See Johnson v. Pearce, 313 So.2d 812 (La.1975); Whittington v. Gibson Discount, 296 So.2d 375 (La.App. 2d Cir.1974). Verification may be required to establish probable cause where the source of the information seems unworthy, or where further information about a serious charge would be readily available. Prosser & Keeton, at p. 877. See State v. Raheem, 464 So.2d 293 (La.1985); Cf. Plassan v. Louisiana Lottery Co., 34 La. Ann. 246 (1882). The reputation of the accused, his opportunity to offer explanation, and the need for prompt action, if any, are all factors in determining whether unverified information furnishes probable cause. Prosser & Keeton, at p. 877. See Hibernia Nat. Bank v. Bolleter, 390 So.2d 842 (La.1980); Jefferson v. S.S. Kresge Co., 344 So.2d 1118 (La.App. 3d Cir.1977); Hardin v. Barker's of Monroe, Inc., 336 So.2d 1031 (La.App. 2d Cir.1976).
Miller, 511 So.2d at 452-53.
Applying these precepts, as the trial court, we conclude that Officers Queen and McCall acted with probable cause. First and foremost, all of the witnesses near the scene of the homicide who could see and hear plaintiff and hear his sister's screams were left with the impressions that Mr. Winn was *286 acting in a violent and hostile manner during Linda's assault. Although their positions did not enable them to actually see the assault, they could hear the victim's desperate screams, which left the impression that the victim considered plaintiff to be a grave threat and not the rescuer he claimed to have been.[3] The validity of these witnesses' statements were uncontradicted by neutral observers or by a subsequent physical inspection of the premises. Consequently, we conclude that probable cause existed at the time of plaintiff's arrest, notwithstanding the fact that plaintiff would one day be absolved of the horrendous homicide of his sister. We do so notwithstanding Officer Queen's failure to apprise the district attorney and/or the trial judge that Mr. Winn had actually given the assailant's description to Officer Thompson and indicated that the perpetrator was a man of a race other than his own. (The officer's affidavit contained Mr. Winn's denial of the charges, but neglected to mention that the accused had allegedly seen the attacker.) We find that the warrant could have been issued even had the trial court been apprised of plaintiff's claims, since the witnesses huddled nearby indicated that, as much as they strained to listen to the melee, they could detect the presence of no such third party. While it would appear that the court should have been better apprised of plaintiff's more specific contention, on the strength of the evidence and lack of malicious intent, we conclude that this shortcoming of Officer Queen's affidavit is not controlling. Absolute certainty of conviction is not the benchmark by which probable cause is determined, and we decline to go so far.
A trial court's determination of probable cause is entitled to significant deference by this court. State v. Ogden [391 So.2d 434 (La.1980)], above; United States v. Middleton, 599 F.2d 1349 (5th Cir.1979). This is true even when, as here, the officers in good faith omitted relevant facts from the affidavit presented to the issuing magistrate. The affidavit supporting issuance of a search warrant must be construed nontechnically and in a common sense fashion. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The probable cause standard recognizes that a degree of uncertainty may exist, since probable cause is not proof beyond a reasonable doubt. State v. Guidry, 388 So.2d 797 (La.1980). The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause. See State v. Abadie [390 So.2d 517 (La.1980)], above; State v. Phillips, 347 So.2d 206 (La.1977).
State v. Lehnen, 403 So.2d 683, 687 (La.1981) (emphasis ours).
We also affirm the trial court's finding of probable cause, notwithstanding plaintiff's complaint that had Officer Coutee sooner questioned Frederick Sanders, an ex-convict neighbor roughly fitting the description given by plaintiff of his sister's assailant, the officer would have sooner heard Sanders relate that decedent, while attempting to ward off her assailant, declared "[d]on't stab me, Mister," language unlikely to have been addressed to a sibling such as plaintiff. According to plaintiff, any probable cause that might have existed before this evidence would have been dissolved because of it, as the authorities would have then known that plaintiff was not their man. Even if we could overlook the irony of plaintiff's sudden placement of faith in ex-con Sanders, who plaintiff initially claimed to have resembled his sister's murderer, we cannot overlook the mountain of inculpatory evidence or the need for prompt action attributable to the severity of the crime and seemingly positive identification of Mr. Winn. As we have observed elsewhere, the need for prompt action is a critical factor in determining whether unverified information furnishes probable cause for an arrest here. In this case, the apparent need for plaintiff's arrest was justified not only by the severity of the crime but by information which was verified in quadruplicate by four reliable witnesses. Given these circumstances, it would not appear unreasonable for authorities to have waited two days to question Sanders.
*287 In light of the foregoing, we uphold the trial court's conclusion that defendants had probable cause to arrest Mr. Winn for the murder of his sister.

(ii) Malice
We turn next to plaintiff's contention that law enforcement personnel acted maliciously in presenting and maintaining the case against him, malice being another element in a suit for malicious prosecution.
However, malice does not submit readily to definition. Green, Judge and Jury 347 (1930); Griswold v. Horne, 19 Ariz. 56, 165 P. 318 (1917). See 54 C.J.S. Malicious Prosecution section 41 (1948); Sanders v. Daniel Intern. Corp., 682 S.W.2d 803 (Mo. 1984). It means something more than the fictitious "malice in law" which has been developed in defamation cases as a cloak for strict liability. There must be malice in fact. Prosser & Keeton, at p. 882. Any feeling of hatred, animosity, or ill will toward the plaintiff, of course amounts to malice. Harper, James and Gray section 4.6 at p. 443. See Barrios v. Yoars, 184 So. 212 (La.App.1938); Girot v. Graham, 41 La. Ann.511, 6 So. 815 (1889). But it is not essential to prove ill will. Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to "tie up the mouths" of witnesses in another action, or as an experiment to discover who might have committed the crime. Prosser & Keeton, at p. 883; Harper, James and Gray section 4.6 at p. 445 n. 8. See Jones v. Soileau, supra; Hibernia Nat. Bank v. Bolleter, supra; Johnson v. Ebberts, 11 F. 129 (C.C.Or.1880); Glover v. Fleming, 36 Md.App. 381, 373 A.2d 981 (1977). Malice may also be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights. Jones v. Soileau, supra; Hibernia Nat. Bank v. Bolleter, supra; Johnson v. Pearce, supra; Brown v. United States, 653 F.2d 196 (5th Cir.1981), cert den. 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). See Spencer v. Burglass, 337 So.2d 596 (La.App. 4th Cir.1976); Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir.1975).
Miller, 511 So.2d at 453.
Marshall contends that, considering the misrepresentations made to the witnesses and to the judge by employees of the City of Alexandria, malice is present. Also, Marshall contends that Officer Queen's failure to interview Frederick Sanders, who fit the description Marshall had given to the police as the assailant, constituted maliciousness on the part of Officer Queen and the Alexandria Police Department.
However, after considering all of the evidence presented by both sides, the trial court could detect no hatred or ill will by the officers. Neither can we. Plaintiff argued that the witnesses were tainted by information received from the Alexandria Police Department which prejudiced the witnesses against him and led them to mistakenly identify him, but the record does not support this contention. Instead, the record reveals that Redmond emphasized with certainty the belief that Marshall Winn was the murderer and testified that the initial affidavit taken contained incorrect statements. Further, during the course of Linda Haynes' deposition, when presented with both her Alexandria Police Department statement and an initial affidavit, she testified that no police officer had ever told her that they thought Marshall Winn committed the crime, rather she insisted that it was her belief that Marshall was the perpetrator of the crime. More importantly, Monya McMichael, the only eyewitness to appear and testify live at trial, denied that the Alexandria Police Department did anything to influence her statement.
Plaintiff's second contention lacks merit as well. As the trial court noted, while it is true that further investigation might have turned up other possible suspects or exculpatory evidence, this has no bearing on whether probable cause existed at the time of the arrest. Clearly, the evidence gathered by independent investigation and the statements of four eyewitnesses identifying Marshall at the scene of the crime led the officers of the *288 Alexandria Police Department to establish probable cause for the arrest of Mr. Winn.
In light of the above, like the trial court, we conclude that a preponderance of the evidence suggests that the arresting officers were motivated by the largely uncontradicted accounts of disinterested eyewitnesses and the severity of the offense, and not the malice plaintiff alleges. At a minimum, we conclude that the trial court was not manifestly erroneous in accepting defendants' version of events over plaintiff's version.
Having found that probable cause existed to arrest and detain plaintiff, and that no malice on the parts of law enforcement personnel existed, we find no merit to plaintiff's first assigned error concerning plaintiff's malicious prosecution claim. Therefore, we turn to plaintiff's last argument which is grounded in general negligence principles.

III. GROSS NEGLIGENCE
La.Civ.Code art. 2315 states as follows:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
Louisiana courts use a duty-risk analysis to determine whether liability exists under this provision. As the Louisiana Supreme Court writes in Mart v. Hill, 505 So.2d 1120, 1122 (La.1987):
We have characterized "duty-risk" analysis as the process to be employed in determining whether liability exists under the facts of a given case. In making the requisite analysis four questions are to be considered:
(1) Was the conduct in question a causein-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970); Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976); Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
In the context of an action like this one:
The jurisprudence of the state recognizes a civil cause of action, based on fault under C.C. 2315, in favor of one "whose liberty has been interfered with in an unwarranted manner." F. Stone, 12 La.Civil Law Treatise, Tort Doctrine, Secs. 200-01, at 264-66 (1977). Like any other delict under C.C. 2315, such an "interference" must be based on fault of the defendant which causes the damage complained of in order for the plaintiff to recover. In Graf v. McCrory Corp., 368 So.2d 1217, 1218 (La.App.1979) (Lemmon, J.), the defendant refused to drop criminal charges unless the plaintiff would release it from civil liability. The court emphasized that the unreasonableness of the defendant's actions under these circumstances is the key to determining fault in a malicious prosecution case just as in any other case based on C.C. 2315-16.
Jones, 448 So.2d at 1271 (emphasis added, note omitted).
As a general proposition, ... public policy requires that all persons shall fully resort to the courts for redress of wrongs, and the law protects them when they act in good faith upon reasonable grounds in commencing either a civil or criminal proceeding. Robinson v. Goudchaux's, supra. This principle has particular relevance to public officials who are charged by law with the enforcement of laws designed to protect the public at large. Only the grossest negligence or arbitrary and capricious conduct on their part will support a claim of malicious prosecution.
Johnson, 313 So.2d at 816 (emphasis added).
In the alternative, plaintiff claims that at a minimum, the inaction and omissions by the officers of the Alexandria Police Department constituted negligence. First, plaintiff argues that the omissions by Officer Queen when she presented the affidavit to the judge *289 in order to obtain an arrest warrant, and the officer's failure to investigate Frederick Sanders prior to his arrest, is tantamount to negligence. However, as previously stated, we have determined that even had the judge been apprised of the omitted facts, probable cause existed based upon the statements of the four witnesses and the independent investigation by the department which did not indicate the presence of a third party in the apartment of Linda Winn. Furthermore, Officer Queen was not required by law to investigate Sanders thoroughly before obtaining an arrest warrant because there was sufficient evidence indicating that plaintiff was the perpetrator of the crime, despite his contentions to the contrary. In short, neither did Officer Queen nor any other officer in the department breach a duty owed to Mr. Winn, rather, the defendants' actions, under the circumstances, were reasonable.
Thus, we find no manifest error in the trial court's conclusion that defendants are innocent of negligence. The record suggests that in arresting Mr. Winn, defendants merely sought to effectuate society's ends, not their own, and had probable cause to do so. Cf. Edmond v. Hairford, 539 So.2d 815 (La.App. 3 Cir.1989), where defendant trumped up charges for personal reasons.
There being no negligence on defendants' part, we find no merit to plaintiff's contentions that the trial court erred in concluding otherwise.

DECREE
In light of the foregoing, the judgment of the trial court is affirmed and plaintiff's claim to damages is denied, at plaintiff's cost.
AFFIRMED.
NOTES
[1] The distinction between the two remedies is largely inconsequential in view of the liberal rules embodied in our Code of Civil Procedure. See, e.g., La.Code Civ.P. art. 862; Gremillion v. Rapides Parish Police Jury, 430 So.2d 1362 (La. App. 3 Cir.), writs denied, 435 So.2d 426, 440 (La. 1983). See also, First South Prod. Credit Ass'n v. Georgia-Pacific, 585 So.2d 545 (La. 1991). Therefore, had plaintiff failed to present malicious prosecution as an alternate theory, he would not have been penalized, provided his pleadings included the appropriate factual charges.
[2] Indeed, so strong is the evidence that the same conclusion would be ordained even under a de novo standard of appellate review. Therefore, under either standard of review, we hold that defendants, by a preponderance of the evidence, have both proven probable cause and disproved their malice.
[3] According to these witnesses, Mr. Winn was yelling and screaming when he picked up a chair to force entry into the home of the victim; to them, it appeared that Linda Winn did not want to let plaintiff into her home.