862 So.2d 1139 (2003)
Donald Brent HOPE, Plaintiff-Appellant,
v.
CITY OF SHREVEPORT and D.W. Ramsey, Defendants-Appellees.
No. 37,759-CA.
Court of Appeal of Louisiana, Second Circuit.
December 17, 2003.
*1141 Walker, Tooke & Lyons by Henry C. Walker, Shreveport, for Appellant.
Tutt, Stroud & Bordelon by A.M. Stroud, III, Jennifer P. McKay, Blanchard, Walker, O'Quin & Roberts, by Stacey D. Williams, for Appellees.
Before STEWART, GASKINS and MOORE, JJ.
STEWART, J.
The plaintiff, Donald Brent Hope, appeals the dismissal of his claims of malicious prosecution and defamation stemming from his arrest for driving while intoxicated ("DWI") by D.W. Ramsey, an officer with the Shreveport Police Department. Hope argues that the trial court erred in finding that the arresting officer acted on probable cause, in good faith, and without malice in making the arrest. Finding merit in Hope's arguments, we reverse the trial court's judgment.

FACTS
On July 29, 1999, Hope was arrested for a third offense DWI in Shreveport, Louisiana. The arrest occurred on Commerce Street near the Texas Street Bridge where Hope's black Chevrolet pick-up truck was parked in a parking spot along the street. The facts surrounding the arrest are disputed by the parties.
Ramsey, the arresting officer, claimed that he encountered a black Chevrolet pick-up coming toward him when he turned northbound from Milam Street onto Commerce. By visual estimation, Ramsey determined that the truck was speeding at 37 miles per hour, so he turned his vehicle around to follow the truck and to look for other violations. He followed the truck to Spring Street where he observed it make a right turn onto a pedestrian walkway on the south side of the Texas Street Bridge. Ramsey was driving too fast to make the turn, so he drove to Travis Street where he made a right turn and then made another right turn back onto Commerce where he saw a black Chevy pick-up in a parking space. Hope exited from the driver's side, and Ramsey could see a passenger seated on the passenger's side. Ramsey administered three field sobriety tests to Hope and arrested him for DWI.
*1142 Hope denied driving the vehicle as alleged by Ramsey. Instead, Hope claimed that he and a friend, Douglas Connelly, had just walked to the truck after leaving the Blind Tiger, a downtown restaurant and bar, where they had been for the past few hours. Hope, who had prior DWI's and whose license was suspended, had gone out for the evening with Connelly. Connelly had driven Hope's vehicle, and upon arrival, Hope had given his keys to another friend, George Hatfield, for safekeeping. Hatfield left the Blind Tiger before Hope and Connelly, but he later went to Hope's vehicle to retrieve some items. Hatfield testified that he left the truck unlocked and kept the keys. When Hope and Connelly were ready to leave the Blind Tiger, they walked to the truck so that Hope could retrieve his cell phone in order to call his sister for a ride home. Both walked to the passenger side of the truck, at which point Ramsey arrived on the scene. Hope claimed that Ramsey asked who was driving the truck. When he and Connelly denied driving, Ramsey asked who owned the truck. Hope admitted that he owned the truck. Ramsey then directed Hope to step to the front of the police car, and he began administering the sobriety tests, which were recorded on videotape. Hope told Ramsey that they had just left the Blind Tiger and asked him to verify this with another officer who was working there as security for the evening. Ramsey did not attempt to verify Hope's claim. Hope was placed under arrest. His vehicle was impounded and towed away.
Two other officers, K.P. Anderson and Todd Blackmon, arrived on the scene after Hope's arrest. Both checked the front of the truck and found it to be hot. They believed this indicated that the vehicle had recently been driven. The two officers searched Connelly for the keys to the truck, but they found only the keys to Connelly's own vehicle. The record indicates that keys to Hope's vehicle may have been found either stuffed between the seat and the console or inside the console. Hope claimed that these were spare keys that he did not even know were in the console.
Hope's version was corroborated by an independent witness who claimed to have witnessed the encounter between Hope and Ramsey. The witness, Veronica Diez, came forward with an affidavit and her deposition was entered into evidence in the civil trial. Diez knew Hope through his sister, whom she had known for five years and whose children had attended school with hers. Diez claimed that she observed two men walking toward Commerce Street from the alley area or walkway under the Texas Street Bridge as she walked to her vehicle after leaving Harrah's Casino. She further observed the two men walk to the passenger side of a truck. An officer pulled up beside them and approached the two men. As she drove away, Diez saw Hope performing sobriety tests. In her deposition, Diez testified that she did not completely recognize Hope that night, but that she thought the man she saw might be him. She learned from Hope's sister about the arrest weeks later and realized that it had been Hope's arrest which she witnessed.
Following his arrest, Hope was charged with a fourth offense DWI. A preliminary examination took place on January 10, 2000, at which the trial judge heard testimony from Ramsey, Hope, Connelly, and Hatfield. Ramsey admitted that he did not see Hope park the vehicle, but testified that he saw Hope exiting from the driver's side. The trial judge found no probable cause for the arrest, and the state later dismissed all charges.
*1143 Hope then filed the instant civil matter against the City of Shreveport and Ramsey seeking damages for false arrest, malicious prosecution, and defamation. The false arrest claim was dismissed on an exception of prescription, and the matter proceeded to trial on his other claims. Based on the evidence presented and his findings of fact, the trial judge concluded that "the preponderance of the evidence fails to establish that Officer Ramsey was not in good faith in his belief that he had probable cause on the night in question to stop, question, and arrest Mr. Hope." As such, the trial judge found in favor of the defendants and dismissed Hope's claims with prejudice in the final judgment. This appeal by Hope followed.[1]

DISCUSSION
An action for malicious prosecution requires proof of the following elements: (1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff. Miller v. East Baton Rouge Parish Sheriff's Department, 511 So.2d 446 (La.1987); Jones v. Soileau, 448 So.2d 1268 (La.1984); Plessy v. Hayes Motor Co., Inc., 31-947 (La.App.2d Cir.6/16/99), 742 So.2d 934; Jenkins v. Baldwin, XXXX-XXXX (La.App. 4th Cir.8/29/01), 801 So.2d 485; Winn v. City of Alexandria, 96-492 (La.App. 3d Cir.11/20/96), 685 So.2d 281.
The plaintiff ordinarily bears the burden of proof on all the elements of the malicious prosecution action, including proving the absence of probable cause and malice. However, there is a presumption of lack of probable cause which is set forth in Robinson v. Rhodes, 300 So.2d 249, 251 (La.App. 2d Cir.1974), writ refused, 303 So.2d 178 (La.1974). Robinson firmly establishes
"the rule that where a committing magistrate, without a trial, has discharged the accused, or the prosecuting officer has dismissed the charge, or where a grand jury has returned a no bill, there is a presumption of want of probable cause with the result that, in a suit for malicious prosecution based on that discharge, the burden of showing that he acted on probable cause and without malice is upon the defendant."
See also Keppard v. AFC Enterprises, Inc., 2000-2474 (La.App. 4th Cir. 11/28/01), 802 So.2d 959; Winn v. City of Alexandria, supra.
Clearly, the first three elements are met in this instance. There was a commencement of criminal proceedings against Hope caused by Ramsey arresting Hope for DWI on July 29, 1999. There was also a bona fide termination of the criminal proceedings in favor of Hope as a result of the dismissal of the prosecution against Hope by the district attorney. In addition, the dismissal of the prosecution gives rise to the presumption of a lack of probable cause and shifts to burden to the defendants to show that Ramsey acted on probable cause and without malice in arresting Hope. The elements of probable cause and malice are at issue in this appeal.
Probable cause for an arrest exists when the facts and circumstances within the knowledge of the arresting officer *1144 and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Miller v. East Baton Rouge Parish Sheriff's Dept., supra and cases cited therein. Probable cause is not proof beyond a reasonable doubt; rather, the probable cause standard recognizes that a degree of uncertainty may exist. Winn v. City of Alexandria, supra. The facts need not exclude all possible innocent explanations in order to support a finding of probable cause. Id.
Malice may be inferred when there is a lack of probable cause or when the defendant acted in reckless disregard of the other person's rights. Miller v. East Baton Rouge Parish Sheriff's Dept., supra; Jones v. Soileau, supra.
We are mindful that an appellate court cannot disturb the factual findings of the trial court in the absence of manifest error. Currie v. Myers, 32,633 (La.App.2d Cir.1/26/2000), 750 So.2d 388, writ denied, XXXX-XXXX (La.3/17/00), 756 So.2d 316. We are also mindful of our duty to review facts to determine whether the trial court's judgment was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. LeBlanc v. Stevenson, XXXX-XXXX (La.10/17/00), 770 So.2d 766; Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216. When testimony on an issue conflicts, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the findings of fact, the trial court concluded that Ramsey was in good faith in his belief that he had probable cause to arrest Hope. Hope argues on appeal that this finding is manifestly erroneous, particularly in light of Ramsey's impeached testimony and the uncontradicted deposition of Veronica Diez, an independent witness. Our review of the record compels agreement with Hope's argument.
In the findings of fact, the trial judge seems to accept Ramsey's version of events beginning with his initial sighting of a black pick-up truck and ending with the arrest of Hope. However, Ramsey's testimony of what occurred was rife with inconsistencies as evidenced by his previous statements in the police reports, at the preliminary examination, and in his deposition.
A significant problem is Ramsey's identification of Hope's vehicle as the vehicle he had allegedly been pursuing. In the police videotape of the stop, Ramsey insists that he saw Hope driving. At trial, Ramsey admitted that he saw only a truck; he did not see the driver. At his deposition and at trial, Ramsey claimed he identified Hope's vehicle as the vehicle he was following by its license plate number which he saw while following the truck and verified it after the stop. However, this seemingly salient information regarding identification was not included in the police reports prepared by Ramsey, and he did not bring this information forward at the preliminary examination. While Ramsey may have been following a black pick-up truck, he came forward with nothing to establish that Hope's truck was in fact, or even likely, the vehicle he had been pursuing.
Another inconsistency is Ramsey's testimony about what he saw when he returned to Commerce Street after he lost sight of the truck that allegedly turned down the pedestrian walkway by the bridge. In the police report and at the preliminary examination, Ramsey claimed that he saw Hope's truck pull into the parking space on Commerce Street where the stop occurred.
*1145 On cross at the preliminary examination and at trial, Ramsey was forced to admit that he did not see Hope pull into the parking space. Ramsey also claimed that he saw Hope exit the driver's side of the vehicle and that he could see the passenger, Connelly, strapped into the passenger side. Both Hope and Connelly flatly denied this. In addition, Veronica Diez, whose deposition was entered into evidence, stated that she observed the two men, Hope and Connelly, walk from the area of the Texas Street Bridge to the passenger side of the vehicle where they were standing when Ramsey made his stop. Diez's uncontradicted testimony supports Hope's claim that he had not been driving. Her testimony, along with Ramsey's many inconsistencies, calls into question Ramsey's credibility and suggests that he could not have had an honest and reasonable belief that Hope's vehicle was the same vehicle he had been following.
There was also some inconsistencies in Ramsey's reporting of the results of Hope's performance on the sobriety tests, particularly the test for which Hope had to pronounce the ABC's. The most glaring inconsistency was Ramsey's statement in the police reports that Hope was slow and hesitant in pronouncing the ABC's and that he mixed or missed letters. The videotape of the test flatly contradicts Ramsey's report. Furthermore, Ramsey was forced to admit at trial that "(I)f the tape shows otherwise, then I was mistaken in what I wrote down."
Finally, there were inconsistencies in Ramsey's testimony regarding the barricades that were in place along the pedestrian walkway. In the police report, Ramsey stated that the vehicle he was following drove around steel barricades. At the preliminary examination and at trial, he claimed that the steel barricades had been removed and that there were orange barrels in place which the truck drove around.
In light of these many inconsistencies, we believe the trial court's factual conclusions to be clearly wrong. Due to his impeached testimony and contradictory statements made throughout the course of the criminal and civil proceedings, Ramsey's testimony lacked all credibility. As previously stated, dismissal of the charges against Hope had the effect of shifting the burden to the defendants to show that Ramsey acted on probable cause and without malice. The defendants chiefly relied upon Ramsey's testimony to meet this burden. We find that this burden was not met.
The defendants did not establish that Ramsey acted on probable cause. Moreover, malice may be inferred from a lack of probable cause or where the defendant acted in reckless disregard of the other person's rights. Winn v. City of Alexandria, supra. In addition to the lack of probable cause, we find that malice was shown through Ramsey's reckless disregard of Hope's rights. This disregard was evidenced by Ramsey's misreporting of the results of Hope's ABC sobriety test, his untruthful claim that he saw Hope pull into the parking space, his other inconsistent statements, and his refusal to take any step to investigate Hope's insistent claim that he had not been driving. For these reasons, we reverse the trial court's judgment and find in favor of Hope on his claim of malicious prosecution.
The only issue remaining is the determination of damages. When the trial court has erroneously rejected the plaintiff's claim and the record on appeal is complete as to damages, the appellate court may make an appropriate award of damages. La. C.C.P. art. 2164; Byrd v. Bossier Parish, School Bd., 543 So.2d 35 (La.App. 2d Cir.1989), writ denied, *1146 550 So.2d 628 (La.1989). Where the other elements of malicious prosecution are established, the element of damages is presumed. Jones v. Soileau, supra; Hibernia National Bank of New Orleans v. Bolleter, 390 So.2d 842 (La. 1980). Damages awarded in an action for malicious prosecution are compensatory only. Jones v. Soileau, supra; Jenkins v. Baldwin, supra.
The record establishes the days Hope missed from work due to his arrest and subsequent criminal proceedings and his expenses associated with those proceedings. These totaled almost $10,000. Following his arrest, Hope was placed in jail and then bonded out the next afternoon. Naturally, Hope experienced some stress from his experience. He was also fearful of the possibility of being convicted of another DWI offense. We believe that an award of $12,000 is sufficient to compensate Hope for his losses, both special and general damages, associated with this matter.

CONCLUSION
For the reasons mentioned, we reverse the trial court's judgment and render judgment awarding damages of $12,000 in favor of the plaintiff, Donald Brent Hope. Costs assessed to the defendants, the City of Shreveport and D.W. Ramsey.
REVERSED and RENDERED.
GASKINS, J., concurring with reasons.
GASKINS, J., concurring.
I respectfully concur with the majority's opinion to reverse the trial court decision in this case. The trial court is vested with making the credibility call, which is the crux of a good faith determination. Therefore, we must adopt the trial court's view of the evidence, and the resulting good faith finding, when based on conflicting testimony by both sides of this lawsuit. This determination, however, is subject to the manifest error rule when evidence does not support, or directly contradicts, the finding. Contrary to the majority, I would find that the trial court correctly ruled that the stop of Mr. Hope was properly made in good faith. I agree with the majority, however that the arrest of the defendant was improper.
For a DWI charge, the officer needs to find that the offender was driving and that he was intoxicated. Officer Ramsey based his probable cause finding of intoxication on the field sobriety test. Mr. Hope's "failure" of the field sobriety test was documented in the officer's police report and testified to by Officer Ramsey. However, this field sobriety test was taped by a video recorder in Officer Ramsey's vehicle. The tape clearly showed that Mr. Hope performed the field sobriety test maneuvers well, and did not make the mistakes that Officer Ramsey said were the basis of the arrest. This isn't to say that Mr. Hope was not intoxicated, just that Officer Ramsey was either grossly negligent or fabricated the test results which he used to justify the arrest. Officer Ramsey's action in arresting Mr. Hope on knowingly false field sobriety test results can only lead to the conclusion that Officer Ramsey had malice, or bad faith, in making this arrest.
NOTES
[1] Our analysis is limited to the malicious prosecution claim, because this is the claim primarily asserted and argued on appeal.