SUSAN M. CHEHARDY, Chief Judge.
| {¡On appeal before us is a summary judgment that was granted, dismissing the plaintiffs’ legal malpractice suit against one defendant. We affirm.
STATEMENT OF THE CASE In August 2001, Evangelist W. King[1] and Jason King (collectively hereinafter “King”), sued Pontchartrain Mortgage Company, Inc. and Pontchartrain Mortgage Corporation (collectively hereafter “Pontchartrain”), Mortgage Equity, Inc. and Commercial Lenders and Equity, Inc. (collectively hereafter “Equity”), Terry P. Lafargue (“Lafargue”), and Bruce A. Miller (“Miller”). In the petition (as amended and supplemented in November 2001 and September 2004), King alleged breach of contract against Pontchartrain and La-fargue arising from a Settlement Agreement and Release executed on October 21, 1998 (“the Agreement”), under which Pontchartrain, Equity and Lafargue agreed to pay $70,000 in return for Evangelist King’s relinquishing his claims to a 50% ownership interest in Pontchartrain and Equity.[2] King alleged that Lafargue and Pontchartrain breached the Agreement by failing to make payments as set out in the Agreement. King further alleged that Lafargue knew at the time of the Agreement that the value of |sthe stock/corporations exceeded that communicated to King, and that King would not have entered into the agreement if they had been informed of the true state and/or value of the corporations.[3]
King alleged Miller committed legal malpractice because he simultaneously represented both King and La-fargue/Pontchartrain in preparing the Agreement, yet Miller failed to disclose the dual representation. King further alleged that Miller erroneously counseled Evangelist King that it was in his best interest to enter the Agreement, when Miller knew that the value of the stock/corporations exceeded that communicated to King by the defendants.
On October 4, 2012, defendant Miller filed a motion for summary judgment. Miller asserted that King would be unable to prove his claim of legal malpractice against Miller because King could not prove any damages caused by Miller’s alleged conduct. Specifically, Miller asserted that King had no evidence that the amount paid to King under the Agreement was not a fair valuation of King’s claimed interest in Pontchartrain at the time the Agreement was signed.
In support of the motion for summary judgment, Miller attached an affidavit by Timothy Murphy, the former certified public accountant for Pontchartrain. In this affidavit, Murphy avers that he is a certified public accountant and has been so licensed since 1982, and that he was the certified public accountant for Pontchartrain when it was in business. Murphy avers that he was aware in 1998 that King desired to leave his employment with Pontchartrain and demanded that he be paid what he believed was his one-half interest in the capital stock of Pontehar- *21 train or one-half of the value of the company. Murphy further avers that although he did not do a formal valuation of Pontchartrain, he was familiar with its |4fínancial status in 1998, and that he believes that the agreed payment of $70,000 to King as set forth in the Settlement Agreement and Release represented a fair, if not even generous, estimate of one-half of the value of Pontchartrain in October, 1998.
Miller also attached the affidavit of Terry P. Lafargue, in which Lafargue testified that he and King, alone, negotiated the settlement agreement at issue. Lafargue further testified that he and King agreed on the $70,000 settlement figure paid to King based upon the calculation of Pontchartrain’s assets as of September 30, 1997, less its liabilities. Lafargue further testified that he and King agreed that this amount would result in a one-half value of $60,949, but that King was not satisfied with being paid $61,000. Therefore, La-fargue said, he agreed to increase the payout to King to the sum of $70,000 in order to resolve this disagreement.
In opposition to the motion for summary judgment, King asserted that he was damaged because Miller failed to disclose his conflict of interest, in that he has not received all payments due him because of a clause in the Agreement that provided that Pontchartrain Mortgage Company, Inc. would not make payments to King if the corporation’s net income was less than $8,000.00 for a month; that he was “duped” by Mr. Miller and the corporation was under-valued; and that King cannot determine the full extent of his damages until he can take the deposition of Terry LaFargue, the preparer of the financial statements for Pontchartrain Mortgage Company, Inc. Thus, King contends the motion for summary judgment is premature because there remains outstanding discovery.
On January 22, 2013, three days before the date set for hearing of the motion for summary judgment, King filed a Supplemental Memorandum in Opposition to Motion for Summary Judgment. Attached to it was a report by Bert F. Verdigets, CPA, CFE, CFF, in the form of a letter to plaintiffs’ counsel stating that, based on his analysis, the range of the price for the company on October 21, 1998, would be | ¡^between $142,225 and $489,625 or at 50% $71,113 and $244,812 respectively, not including interest on those amounts, “which would significantly increase those numbers.” The letter was neither sworn nor accompanied by an affidavit verifying it.
At the hearing on the motion for summary judgment, counsel for Miller objected to admitting the Verdigets letter as an exhibit in support of King’s opposition. Defense counsel pointed out that the letter was inadmissible because it was unsworn and also because it was filed only three days before the hearing, in violation of La. C.C.P. art. 966 and La. Distr. Ct. Rule 9.9.
In ruling on the motion for summary judgment the judge stated, “I am going to grant the motion. Given the age of the case and the fact that the affidavit, I mean, the letter is not sworn, ... I’m going to find it’s not admissible.... There was certainly enough time for sworn evidence to be presented.”
The plaintiffs have appealed. On appeal they make the following assignments of error:
1. The totality of the record evidence established that Mr. King proved that he sustained damages as a result of Mr. Miller’s conflict of interest, and at a minimum, raised multiple issues of material fact that precluded the granting of summary judgment. The district court erred in granting Mr. Miller’s Motion for Summary Judgment.
*22 2. Mr. Bert Verdigets’s expert report was timely filed and appropriate evidence to oppose a Motion for Summary Judgment pursuant to the Louisiana Supreme Court’s decision in Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.02/29/00), 755 So.2d 226. The district court erred in excluding Mr. Verdigets’s expert report from evidence.
We find no merit in these assignments, for the following reasons.
[,LAW AND ANALYSIS
Appellate courts review summary judgments de novo, under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Premier Restaurants, Inc. v. Kenner Plaza Shopping Ctr., L.L.C., 99-1310, p. 8 (La.App. 5 Cir. 8/29/00), 767 So.2d 927, 931-32, citing Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991).
A summary judgment should be granted only if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached .thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
La. C.C.P. art. 967(A).
In Input/Output, Inc. v. Wilson Greatbatch, Inc., 07-570, pp. 9-10 (La.App. 5 Cir. 1/22/08), 977 So.2d 109, 114-115, writ denied, 2008-0397 (La.4/18/08), 978 So.2d 350, this Court held:
Articles 966 and 967 do not permit a party to utilize unsworn and unverified documents as summary judgment evidence. In meeting the burden of proof, unverified documents, such as letters or reports annexed to motions for summary judgment are not self-proving and, therefore, will not be considered as competent summary judgment evidence.
A document that is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be |7given weight in determining whether there are remaining genuine issues of material fact. [Citations omitted.]
La. C.C.P. art. 966 provides that the summary judgment procedure is favored and shall be construed to accomplish the just, speedy, and inexpensive determination of every action, except those disallowed. La. C.C.P. art. 966(A)(2). Unlike an exception of no cause of action, on a motion for summary judgment the allegations of the petition are not automatically considered as true; rather, La. C.C.P. arts. 966-67 set forth the applicable tests. Owens v. Martin, 449 So.2d 448, 452 n. 1 (La.1984).
Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized.... The initial burden remains with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the nonmoving party must produce factual support suf *23 ficient to satisfy his evidentiary burden at trial. If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted.
[[Image here]]
Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. [Footnote and citations omitted.]
Premier Restaurants, Inc., 99-1310 at p. 9, 767 So.2d at 932.
Applying these principles in this case, we find no error in the trial court’s grant of the motion for summary judgment.
Further, as did'the trial judge, we note there was more than enough time for the plaintiffs to obtain proper documentation. The lawsuit itself has been pending for 12 years, while the motion for summary judgment was filed three months before the date on which it was argued, and the trial court granted one continuance of the hearing date in part to allow the plaintiffs time for additional discovery. IsBecause the Verdigets letter was un-sworn, it could not be considered by the trial court as competent summary judgment evidence. See Input/Output, Inc., supra.
Finally, there is no merit to King’s argument that summary judgment is improper because Miller did not request service of the motion for summary judgment on Terry Lafargue. In the cases cited by King, the party complaining of the failure to serve was the party who had not been served. In this case, it is not the place of King, the plaintiff, to complain that La-fargue, a defendant, was not served by a co-defendant. King’s position vis-a-vis Miller is not affected by such a failure of service and it is ironic that King steps from the position of plaintiff to complain that the failure of service of the motion for summary judgment “will undoubtedly prejudice Mr. LaFargue” at trial.
DECREE
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the plaintiffs-appellants, Evangelist W. King and Jason King. .

AFFIRMED.

. Evangelist King is sometimes referred to by his nickname, "Bunkey,” in correspondence included as exhibits.

. Jason King, the son of Evangelist King, was named in the Agreement as ''third party beneficiary.” The Agreement provided that the payments due to Evangelist King were to be made to Jason King.

.In the Petition, King also sought dissolution of the agreement and return of the interest/stock which was the subject of the agreement. In the Second Supplemental and Amending Petition, however, King withdrew the request to dissolve the agreement.