STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

18-664

DAPHNE SMITH

VERSUS

CITY BANK & TRUST COMPANY

\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE

TENTH JUDICIAL DISTRICT COURT

PARISH OF NATCHITOCHES, NO. 88,767

HONORABLE W. PEYTON CUNNINGHAM, JR.,

DISTRICT JUDGE AD-HOC

\*\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS

JUDGE

\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy H. Ezell and Candyce G. Perret, Judges.

**REVERSED; REMANDED.**

Nelson W. Cameron
675 Jordan Street
Shreveport, LA
(318) 226-0111
Attorney for Appellant, Daphne Smith

Adams and Reese, LLP
Elizabeth A. Roussel
L. Cole Callihan
701 Poydras Street, Suite 4500
New Orleans, LA 70139
(504) 586-7931
 Attorneys for Appellee, City Bank & Trust Company

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Daphne Smith (Smith) was employed as a tenured senior teller at City Bank & Trust Company (City Bank) in Natchitoches, Louisiana in December of 2013. At that time, she had worked for City Bank for over eleven years without incident. Smith was scheduled to leave for vacation on December 13, 2013. At the close of business on that day City Bank employees performed a routine dual audit in accordance with its policies affecting tellers leaving for vacation. The dual audit of Smith's drawer balanced showing cash and transactions totaling $7,026.64. On the following Monday, City Bank's balancer audited Smith's tickets and found Smith's drawer was $4,000.00 out of balance. According to the balancer's report the tickets in this audit indicated Smith's drawer should have a balance of $9,026.64 but the system showed a cash balance of only $5,026.64.

City Bank's balancer informed Smith's University Branch Manager, JoAnna Washington (Washington), of the discrepancies. Washington and the head teller, Mary Quayhagen (Quayhagen), performed a re-count of the cash in Smith's drawer and physically reviewed Smith's tickets attempting to resolve the discrepancies. According to the excerpt of Washington's deposition testimony, she and Quayhagen found a "transaction that reduced the outage from $4,000 to $2,000" which she says Smith apparently "failed to account for." Washington and Quayhagen entered that transaction back into the system which left the audit $2,000 short. City Bank alleges this shortfall is the result of a buy-cash transaction reflected on the computer for which there is no corresponding ticket. City Bank maintains that the absence of this ticket creates an inference that the money is missing and unaccounted for. It further alleges that Smith is seen on video using her computer after the dual audit and that during her time at the computer she deleted a transaction done earlier that day for which there is a verifiable ticket. Smith asserts this was an honest mistake. City

Bank implies that this was done as an attempt to balance Smith's drawer. City Bank maintains it is breach of bank protocol for Smith to re-enter the computer system after the audit and it is a breach of bank protocol for Smith to have a transaction for which there is no ticket to establish a verifiable trail of the transaction. City Bank admits there is no evidence that cash is actually missing from the bank but, because it is unaccounted for, it is presumed missing. Additionally, because Smith, as a teller, listed a cash transaction for which no ticket was found to verify the transaction the bank presumed or suspected Smith, through computer fraud, was responsible for the missing money. Based on these notions City Bank informed local authorities that it believed Smith was guilty of theft of $2,000 by computer fraud just before leaving the bank for vacation.

City Bank's Chief Operating Officer, Brandon McKee (McKee), contacted the Natchitoches Parish Sheriff's Office (NPSO) informing them, according to Detective Carey R. Etheredge's (Etheredge) deposition testimony, "that he had a teller that has some money that's missing. And that she's gone on vacation. And he was asking us if we could look into that to see, you know, if we felt the same thing they felt and that the money was taken fraudulently." When asked "So he was asking you to confirm what he was telling you?" Etheredge responded "Right. . . . Basically he says they felt like [Smith] stole the money."

Etheredge and his partner were assigned to investigate the complaint. Within a few days Etheredge agreed that charges should be brought against Smith. He presented an affidavit to a local judge and obtained an arrest warrant. The District Attorney's office was not informed of the investigation and did not participate in the procuring of the arrest warrant. According to Etheredge's deposition testimony this was normal protocol for initiating prosecutions. Following Smith's arrest, the matter was turned over to the District Attorney.

2

On the date set for a probable cause hearing the District Attorney dismissed all charges against Smith. Subsequently, Smith filed suit seeking damages for malicious prosecution. City Bank filed a motion for summary judgment asserting it is entitled to summary judgment: "1 Because the NPSO performed an independent investigation, City Bank did not legally cause [Ms. Smith's] prosecution; 2 City Bank did not act with any malice toward [Ms. Smith]; and 3 City Bank had probable cause to believe that [Ms. Smith] was guilty of wrongdoing." Additionally, City Bank asserted in the alternative that Smith lacked evidence of damages. The trial court granted summary judgment in favor of City Bank, dismissing Smith's claims with prejudice. In its ruling from the bench the trial court stated:

> In order to sustain a motion for summary judgment the Court is faced with the question of whether or not there is a genuine issue of material fact. I have read all of the exhibits attached to both the motion for summary judgment and the opposition to the motion for summary judgment. They are very well made, they are easy to understand and I find that the City Bank and Trust Company bore no, absolutely no ill will in the investigation and the subsequent filing of criminal charges by the District Attorney towards Daphne Smith. Having read all of the exhibits and having listened to argument this morning I find that the trick word here is the word genuine. I find no genuine issue of material fact.

Smith appeals the granting of summary judgment dismissing her case.

### Legal Analysis

Smith asserts three assignments of error:

1) The trial court erred by finding no "ill will" when malicious prosecution does not require such a finding and where presumptions in Plaintiff's favor placed the burden upon City Bank to show it was free of malice and where Plaintiff produced proof of reckless disregard for Plaintiff's rights.

2) The trial court did not rule whether there existed probable cause. In the event this court reviews this issue, the summary judgment presumption and evidence show a reasonable inference existed that there was no probable cause to arrest or prosecute Plaintiff Daphne Smith for theft or computer fraud.

3) The trial court did not rule whether there existed summary judgment evidence of causation. In the event this court reviews this issue, Plaintiff shows that City Bank caused the

3

criminal prosecution of Ms. Daphne Smith. City Bank did not merely report suspicious behavior but asserted Ms. Smith committed a crime before any law enforcement investigation began. Law enforcement investigation relied solely upon information facts provided by City Bank and City withheld exculpatory information.

We review summary judgments under the de novo standard of review, according no weight to the judgment of the trial court. *See Barber v. La. Mun. Risk Mgmt. Agency Grp. Self-Insured Fund*, 17-1005 (La. App. 3 Cir. 4/18/18), 244 So.3d 56, and cases cited therein.

> The plaintiff ordinarily bears the burden of proof on all the elements of the malicious prosecution action, including proving the absence of probable cause and malice. However, there is a presumption of lack of probable cause which is set forth in *Robinson v. Rhodes,* 300 So.2d 249, 251 (La.App. 2d Cir.1974), *writ refused,* 303 So.2d 178 (La.1974). *Robinson* firmly establishes
>
> > ". . . the rule that where a committing magistrate, without a trial, has discharged the accused, or the prosecuting officer has dismissed the charge, or where a grand jury has returned a no bill, *there is a presumption of want of probable cause with the result that, in a suit for malicious prosecution based on that discharge, the burden of showing that he acted on probable cause and without malice is upon the defendant.*"
>
> See also *Keppard v. AFC Enterprises, Inc.,* 2000–2474 (La.App. 4th Cir.11/28/01), 802 So.2d 959; *Winn v. City of Alexandria,*[96-492 (La.App. 3 Cir. 11/20/96), 685 So.2d 281.]

*Hope v. City of Shreveport*, 37,759, p. 5 (La.App. 2 Cir. 12/17/03), 862 So.2d 1139, 1143 (emphasis added).

Because the District Attorney dismissed the charges just before the probable cause hearing, the burden shifted to City Bank to rebut the presumptions of malice and probable cause. The trial court said its ruling was based on its finding that: "City Bank and Trust Company bore no, absolutely no ill will in the investigation and the subsequent filing of criminal charges by the District Attorney towards Daphne Smith." This language indicates the trial judge misunderstood City Bank's burden of proof. It was not Smith's burden to prove ill will on the part of the bank, it was

4

the bank's burden to rebut the presumptions the law created against it as to malice (ill will) and probable cause.

Critical to overcoming the presumption that City Bank acted without probable cause is a determination of whether Etheredge's investigation was of such a degree as to constitute an intervening cause. We find it was not.

In *Lemoine v. Wolfe*, 575 F.App'x 449, 456 (5th Cir. 2014), *certified question accepted*, 14-1546 (La. 10/31/14), 151 So.3d 611, and certified question answered, 14-1546 (La. 3/17/15), 168 So.3d 362 (alterations in original) (footnotes omitted), the federal court explained:

> Under Louisiana law, when a malicious prosecution claim is brought against a civilian-complainant, "[a]n independent investigation by law enforcement of [the complaint] may break the chain of causation between the complaint and the ultimate commencement of a criminal proceeding." Accordingly, citizens who "merely report[ ] their observations to police officers," spurring the police officers to conduct their own investigation, are not usually the legal cause of criminal prosecution. But *if the "record shows broad reliance on the facts provided by the [civilian-complainant] and only limited independent inquiry by the police," that is enough to show legal causation.*

According to excerpts of Etheredge's deposition testimony, attached to Smith's opposition to the motion for summary judgment, Etheredge relied almost exclusively on information provided by McKee. The only person he interviewed regarding the matter was Smith. Etheredge did not interview either of the other two persons seen on the video conducting the Friday audit, and he did not interview either of the individuals who conducted the Monday audit and handled Smith's tickets and cash. When he asked McKee if there were any videos showing Smith taking money, he says he was told there were no videos and he was told that the video camera at Smith's window was not working. This, however, was not so. In fact, the camera *was* working and there *was* video footage, viewed by McKee, of Smith's transactions on Friday at the drive through. Moreover, McKee testified in his deposition that there is nothing on that video indicating Smith at any time took any money while

5

working as a teller. Etheredge testified in deposition he would be "shocked" to learn that such a video in fact existed.

In his deposition testimony Etheredge explained that he and his partner, Victor Kay, were given information on the case by McKee who called them to come to the bank. He further testified that McKee gave him and Kay information on the matter including Smith's "employee information, her name, date of birth, that kind of stuff. And then he gave us three different transactions that took place that he identified as what happened." Then the following colloquy occurred:

Q. So he's telling you what happened.

A. Correct.

Q. In his opinion.

A. By their paperwork.

Q. In his opinion.

A. Correct.

According to Etheredge he only interviewed Smith. He did not interview any potential witnesses including Quayhagen, Washington, or City Bank's "IT guy," despite knowing that Quayhagen and Washington both can be seen in the video of the Friday audit at Smith's computer and both participated in handling Smith's tickets and cash. In fact, Etheredge testified in deposition that he never asked for the identification of these witnesses other than his being told one of the women on the video was Smith's manager. He also testified that he did not deem it important to interview these people because: "Once we interviewed Daphne [Smith] and she denied deleting a transaction or altering a transaction that was done on video, at that point, no I didn't feel like, I didn't feel it was important interviewing anybody else, because they couldn't have gotten on the computer and done it." He could only have reached this conclusion based on what McKee told him. McKee's deposition excerpts and Smith's affidavit, filed in opposition to the motion for summary

6

judgment, indicate McKee failed to inform Etheredge that two bank employees entered Smith's cash drawer, examined her tickets, took those tickets home after the discovery of the alleged missing funds, and that both no longer work for the bank. Quayhagen committed suicide many months after Smith's arrest and Washington left the employ of the bank under undisclosed circumstances.

Etheredge's deposition testimony further indicates the extent to which he relied on McKee's information and how little independent action he engaged in:

> Q.  Do you know who had access to Daphne Smith's cash drawer on the following Monday?
>
> A.  No. I do not.
>
> Q.  Do you know how many times the cash was actually counted on the following Monday?
>
> A.  No.
>
> Q.  Do you have any idea where the tickets were taken on December 13th—do you have any idea where they were locked up?
>
> A.  No.
>
> Q.  Do you have any idea who counted the tickets?
>
> A. No. I do not.
>
> Q.  Who gave you those tickets?
>
> A.  Are you talking about the paperwork I have in the—
>
> Q. yes.
>
> A.  Brandon McKee gave me that.
>
> Q.  Okay.  Do you know whether anyone tampered with the tickets on December the 16th, 2013?
>
> A.  Not that I know of.  No, I wouldn't.  I wouldn't know who looked at them.
>
> . . . .
>
> Q.  Who found the missing, the alleged missing $2,000?
>
> A.  I couldn't tell you that.  It was just—Mr. McKee was the one who talked to us.

Additionally, Smith states in her affidavit that her review of the video does not square with Etheredge's representation regarding the video. Smith's affidavit chronicles the video minute by minute and states that the video shows both employees at the computer alone and does not show Smith at the computer at the time Etheredge alleges.

We find this record shows the "investigation" by NPSO was not sufficiently independent to break the chain of causation. Thus, City Bank cannot rely on this argument to rebut the presumption of lack of probable cause created by the district attorney's dismissal of the prosecution at the outset of the probable cause hearing. We also find that much of this evidence is also indicative of malice on the part of City Bank, or at the very least fails to rebut the presumption of malice.

With regard to malice, Louisiana courts have stated:

> [M]alice does not submit readily to definition.... Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice. But it is not essential to prove such ill will. *Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to "tie up the mouths" of witnesses in another action, or as an experiment to discover who might have committed the crime.* Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights.

*Miller* [*v. East Baton Rouge Par. Sheriff's Dep't*, 511 So.2d 446 (La.1987)] at 453 (citations omitted).

Of importance to this matter, *Louisiana jurisprudence provides that when charges against an individual are dismissed "prior to trial, lack of probable cause and malice are presumed and the burden is on the defendant to prove he acted with probable cause and without malice." Zerbe v. Town of Carencro,* 884 So.2d 1224, 1231 (La.App. 3rd Cir.2004). In this matter, all counsel agree under the facts, the presumption operates and the government has the burden of showing it acted on probable cause and without malice.

Finally, pursuant to Louisiana law, "Damages" are "presumed when the other five elements are established." *Jones*[ *v. Soileau*, 448

So.2d 1268] at 1273 [(La. 1984)]; *see also Cleveland [v. U.S.,]*, 457 F.3d [397] at 403 [5th Cir. 2006)]; 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2647.

*Vidrine v. United States*, 846 F.Supp.2d 550, 559–60 (first and second alterations in original) (W.D. La. 2011).

The jurisprudence has established that malice "may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights." *Miller v. East Baton Rouge Par. Sheriff's Dept.*, 511 So.2d 446, 453 (La.1987). Additionally, as the federal court recognized, our courts have also said:

> [M]alice does not submit readily to definition.... Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice. *But it is not essential to prove such ill will. Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to "tie up the mouths" of witnesses in another action, or as an experiment to discover who might have committed the crime.*

*Id.* (emphasis added) (citations omitted)

City Bank admits that the alleged missing money may have been missing for many months and that, though it kept this information from Detective Etheredge, no video or other evidence shows Smith actually took any money at any time from the bank. The facts thus far presented at summary judgment show only that Smith's violation of bank protocol raised an *inference* on the part of City Bank that Smith was guilty of theft of funds by computer fraud. City Bank is only entitled to summary judgment if it shows that "only one conclusion may reasonably be drawn from the evidence [it presented at summary judgment]. *See* LSA-C.C.P. art 966." *Smith v. State Through Dep't of Admin.*, 96-432, p. 7 (La.App 1 Cir. 5/9/97), 694 So.2d 1184, 1188, *writ denied*, 97-1493 (La. 11/14/97), 703 So.2d 1288. Based on the evidence submitted at summary judgment we cannot say that only one conclusion regarding City Bank's behavior can be reasonably drawn. For example, it may be

that City Bank's institution of Smith's prosecution was for the purpose of obtaining a private advantage, such as enabling it to file an insurance claim for the supposed loss of $2,000.00 to recoup its alleged loss funds. Such a motivation would constitute malice. This court must take all facts presented on summary judgment in a light most favorable to Smith and all reasonable inferences must be drawn in her favor. *See Meyer & Assocs., Inc. v. Coushatta Tribe of La.*, 14-1109, 14-1114 (La.App. 3 Cir. 1/27/16), 185 So.3d 222, *writ denied*, 16-369 (La. 4/22/16), 191 So.3d 1048, citing *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226.

In *Hope*, 862 So.2d at 1143, the appellate court set forth the elements which must be proved in a malicious prosecution action:

> An action for malicious prosecution requires proof of the following elements: (1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff. *Miller v. East Baton Rouge Parish Sheriff's Department,* 511 So.2d 446 (La.1987); *Jones v. Soileau*, 448 So.2d 1268 (La. 1984); *Plessy v. Hayes Motor Co., Inc.,* 31–947 (La.App.2d Cir.6/16/99), 742 So.2d 934; *Jenkins v. Baldwin,* 2000–0802 (La.App. 4th Cir.8/29/01), 801 So.2d 485; *Winn v. City of Alexandria,* 96–492 (La.App. 3d Cir.11/20/96), 685 So.2d 281.

In this case there is no dispute as to the first element, Smith was formally charged with criminal offenses. There is also no dispute that the prosecution of Smith was terminated by the district attorney, thus establishing the third element. This termination of prosecution raised a presumption in favor of Smith establishing elements four and five. We have already found that NPSO's investigation was not sufficiently independent to break the chain of causation, leaving City Bank as the legal cause of Smith's prosecution. Thus, Smith established the first five elements of a malicious prosecution. Unless these five elements are successfully rebutted by City Bank, the sixth element, damages, are presumed. In order to be entitled to

10

summary judgment City Bank had the burden to rebut the presumption that it lacked probable cause and the presumption it acted with malice. We find it failed in both regards and is therefore not entitled to summary judgment.

Smith, by her affidavit, raises genuine issues of material fact calling into dispute City Bank's and the detective's version of what the video shows. McKee testified that there is no direct evidence that Smith took any money from the bank and that no video in the bank's possession ever shows Smith taking cash. He also said the money may have been missing for up to six months. The only basis for concluding Smith took money from the bank at any time is the bank's contention that Smith broke protocol by re-entering the computer system after the Friday audit and adjusted a $2,000.00 item at that time. Smith maintains she simply made an error in making her entries. The only evidence presented at summary judgment by City Bank regarding this alleged transaction are photo copies of documents generated by a computer purporting to show Smith's alleged activity on her computer. Etheredge admitted he has no idea what the codes on this document indicate. Unsworn, uncertified, unverified evidence presented by attaching it to the Detective's deposition is not valid evidence.

> In *Input/Output, Inc. v. Wilson Greatbatch, Inc.,* 07–570, pp. 9–10 (La.App. 5 Cir. 1/22/08), 977 So.2d 109, 114–115, *writ denied,* 2008–0397 (La.4/18/08), 978 So.2d 350, this Court held:

>> Articles 966 and 967 do not permit a party to utilize unsworn and unverified documents as summary judgment evidence. In meeting the burden of proof, unverified documents, such as letters or reports annexed to motions for summary judgment are not self-proving and, therefore, will not be considered as competent summary judgment evidence.

>> A document that is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether there are remaining genuine issues of material fact. [Citations omitted.]

11

*King v. Pontchartrain Mortg. Co.*, 13-633, pp. 6-7 (La. App. 5 Cir. 1/31/14), 134 So.3d 19, 22, *writ denied*, 14-430 (La. 4/11/14), 138 So.3d 610.

In *Input/Output, Inc.*, 977 So.2d at 115-16 (emphasis added) (footnotes mitted), the court rejected as inadmissible unverified and uncertified documents such as those introduced here:

> Much of the remaining evidence offered in support of defendants' motion for summary judgment was in the form of excerpts of depositions *and documents identified in conjunction therewith*. The first is an eight-page excerpt of the deposition of Michael Pyszczek, an employee of defendants, who identified a document referred to as "Exhibit 14." This exhibit is an interoffice memorandum dated February 2, 2000 from another employee, Brian LaPrade, containing a summary of the key inputs that were used to define requirements of the "Super D" battery pack designed by defendants. This memo refers to a group of documents upon which defendants relied in the development of the battery pack. *There is no affidavit or deposition of Mr. LaPrade in the record which identifies the memo prepared by him, nor are the documents referred to in Mr. LaPrade's memo sworn to or otherwise verified.*
>
> . . . .
>
> In *Premier Restaurants, Inc. v. Kenner Plaza Shopping Center, L.L.C.,* 99–1310, p. 10 (La.App. 5 Cir. 8/29/00), 767 So.2d 927, this Court stated as follows:
>
>> The initial determination, on a motion for summary judgment, is whether the supporting documents presented by the moving party are sufficient to resolve all material issues of fact, if they are not sufficient summary judgment should be denied. To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact.
>>
>> *A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether or not there remain genuine issues of material fact. An unsworn and unverified document is insufficient. Thus, statements made in letters rather than by affidavits have no evidentiary value.*
>
> *Id.,* 99–1310, p. 10, 767 So.2d at 932–933. (Citations omitted.)

After a careful review of the documentation submitted in support of defendants' motion for summary judgment, we fail to

find these documents are of sufficient evidentiary quality to be given weight in determining whether or not there remain genuine issues of material fact. Unless the motion has been made and supported by affidavits, together with *sworn or certified copies of all papers or documents referred to*, or depositions or answers to interrogatories, La. C.C.P. art. 967 does not shift the burden to the adverse party to set forth specific facts showing that there is a genuine issue for trial. *Murphy v. L & L Marine Transp., Inc.,* 97–33 (La.App. 5 Cir. 5/28/97), 695 So.2d 1045, 1048. To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. *In making this determination, the mover's supporting documents must be closely scrutinized and the non-mover's indulgently treated*. Since the moving party bears the burden of proving the lack of a material issue of fact, *inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party. Id.* Without the appropriate supporting documentation, the mover cannot be said to be entitled to summary judgment.

Although we conclude herein that defendants failed to meet its burden on summary judgment, we nevertheless find that plaintiffs submitted evidence indicating there remain issues of material fact which preclude summary judgment in this case. If qualifying evidence is submitted in opposition to a motion for summary judgment that creates a dispute as to a genuine issue of material fact, a motion for summary judgment should be denied. *Independent Fire Ins. Co. v. Sunbeam Corp.,* 99–2181, p. 19 (La.2/29/00), 755 So.2d 226, 237.

The documents which are crucial at this summary judgment stage are the documents concerning what the computer shows on the Friday audit to back up City Bank's contention that Smith turned the computer back on and re-entered the system after the audit was completed and made or deleted an entry. It is this alleged transaction that forms the entire basis for City Bank's position that Smith broke protocol and in their view is *a fortiori* guilty of theft by computer fraud for the money it says is missing. The documents introduced are simply photo copies of City Bank documents provided to Etheredge. He can swear that these are copies of documents he was provided and relied on, but that does not equate to a proper foundation to enter these documents in evidence for purposes of summary judgment. City Bank should have presented certified copies of these documents or attached them to an affidavit of the appropriate bank officer who could attest to their authenticity.

13

Without these documents in evidence the bank clearly fails to meet its burden on summary judgment to rebut the presumption it acted without probable cause and with malice. We note too, that documents filed with Defendants' reply are not admissible in support of its motion for summary judgment. La.Code Civ.P. art 966(B)(3).[1]

As to probable cause, "[t]he crucial determination regarding the absence of probable cause is whether the defendant had an honest and reasonable belief in the allegations he made." *Keppard v. AFC Enters., Inc.*, 00-2474, p. 9 (La.App. 4 Cir. 11/28/01), 802 So.2d 959, 966, and cases cited therein. Thus, in order to rebut the presumption that City Bank acted without probable cause it needed to show that it had a reasonable basis to accuse Smith of stealing money from the bank. As we have already said, the only documentary evidence which might be construed to support such a claim is not admissible in the manner submitted and therefore cannot be considered. Additionally, all that the circumstantial evidence submitted in support of summary judgment shows is that City Bank assumed Smith stole funds based on her violation of bank protocol. That is insufficient. Further, the bank admits it has no proof that any funds are actually missing and says that the alleged missing money could have gone missing *anytime in the six months prior to the date of the alleged computer entry*. Moreover, Smith's affidavit disputes Etheredge's testimony regarding the video and our review of the video shows another person at the computer at the time stated by the detective and McKee. On the basis of assumptions the bank concluded, and told the police, that Smith stole funds and committed computer fraud, despite the fact that the bank had no idea how long the money was missing, what might have happened to the missing ticket, and that the

---

[1] "Any reply memorandum shall be filed and served in accordance with Article 1313 not less than five days prior to the hearing on the motion. *No additional documents may be filed with the reply memorandum*." La.Code Civ.P. art. 966(B)(3) (emphasis added).

14

tickets were handled by two other people physically moving them from location to location during the audit process. Added to these facts is the fact that one of the persons who was at Smith's computer at the time of the Friday audit was also one of the people who handled the tickets later, left the employ of the bank, and subsequently committed suicide. City Bank fails to carry its burden to rebut the presumption that it acted without probable cause.

Additionally, the interpretation of some of the deposition testimony submitted at summary judgment requires credibility determinations which cannot be made on summary judgment.

> [A]ll of the recent changes to La.Code Civ.P. art. 966 did not change the well-settled rule that in evaluating a summary judgment issue, *the trial court is precluded from making credibility determinations and must evaluate inferences from undisputed facts in a light most favorable to the party opposing the motion. Indep. Fire Ins. Co. v. Sunbeam Corp.,* 99–2181, 99–2257 (La.2/29/00), 755 So.2d 226. Nor did they change the long-standing rationale that "[a] motion for summary judgment is rarely appropriate for a determination based on subjective facts, such as intent, motive, malice, knowledge, or good faith." *Baldwin v. Bd. of Supervisors for Univ. of La. Sys.,* 06–961, p. 7 (La.App. 1 Cir. 5/4/07), 961 So.2d 418, 422. As noted in *Smitko v. Gulf South Shrimp, Inc.,* 11–2566, p. 7 (La.7/2/12), 94 So.3d 750, 755, "[a]ppellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate."

*Meyer & Assocs., Inc.*, 185 So.3d at 241–42, (emphasis added) (second and third alterations in original).

In a recent decision the state supreme court reversed this court's ruling granting summary judgment in *Degueyter v. First American Title Company*, 17-2163, (La. 9/18/18), 252 So.3d 475. In that case the supreme court, citing its decision in *Penalber v. Blount*, 550 So.2d 577 (La.1989) reiterated that summary judgment "is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge and good faith." *Degueyter*, at 475. We find summary judgment is not appropriate in this case for a determination of malice on the part of City Bank. Moreover, malice and lack of probable cause are presumed in this case,

15

and City Bank fails to present evidence to rebut these presumptions. It also fails to present admissible evidence to support its claim that Smith committed computer fraud in the manner asserted. Further, Smith presented evidence which bolstered the presumptions of malice and lack of probable cause.

Smith views some information shared or kept from Etheredge as exculpatory while City Bank's view is that the information it gave and/or kept from Etheredge says more than it actually says. It maintains the information is not exculpatory. This disagreement also points to unresolved issues of genuine material facts, the resolution of which requires credibility determinations which are not appropriate on summary judgment.

As we have already noted in this case damages are presumed, thus there is no merit to City Bank's alternative contention that Smith failed to prove income loss. The trial court did not address this issue, but a remand is unnecessary in light of the jurisprudence we have cited herein which clearly holds damages here are presumed. The determination of the amount of damages can only be made at the trial on the merits.

For the reasons stated the judgment of the trial court is reversed and the case is remanded to the trial court for further proceedings. All costs of this appeal are assessed against City Bank.

**REVERSED; REMANDED.**